FRANK DYNES, PLAINTIFF IN ERROR, *v.* JONAH D. HOOVER.

The Constitution of the United States gives to Congress the power to provide and maintain a navy, and to make rules for its government.

In the exercise of this power, Congress provided for the punishment of desertion and of other crimes not specified in the articles, which should be punished according to the laws and customs in such cases at sea.

Where a seaman was charged with deserting, and the court martial found him guilty of attempting to desert, the court had jurisdiction over the subject-matter, and an action of trespass for false imprisonment will not lie against the ministerial officer who executes the sentence for attempting to desert.

It is only where a court has no jurisdiction over the subject-matter, or, having such jurisdiction, is bound to adopt certain rules in its proceedings, from which it deviates, whereby the proceedings are rendered *coram non judice*, that an action will lie against the officer who executes its judgment.

The authorities upon this point examined, and also the legal powers of courts martial.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington.

Dynes was a seaman in the navy, who was tried by a court martial upon a charge of desertion, who found him not guilty of deserting, but guilty of attempting to desert; and sentenced him to be confined in the penitentiary of the District of Columbia at hard labor, without pay, for the term of six months from the date of the approval of the sentence, and not to be again

enlisted in the naval service. Whereupon, the President of the United States directed Hoover, the marshal of the District, to commit him to the penitentiary.

The proceedings of the Circuit Court are stated in the opinion of the court.

The case was argued by *Mr. Charles Lee Jones* for the plaintiff in error, and by *Mr. Gillet* for the defendant. There was also a brief on that side, filed by *Mr. Cushing*, the late Attorney General.

*Mr. Jones* commenced his argument with a review of some· of the principles of military law pertinent to the issue; after which, he proceeded to state his points, of which there is room to notice only the following, viz:

That the judgment and sentence of the court martial was an absolute nullity, and affords no sort of justification to any one executing process under it.

The following well-settled principles of law cannot be controverted: "That when a court has jurisdiction, it has a right to decide every question before it; and if its decision is merely *erroneous*, and not *irregular and void*, it is binding on every other court until reversed. But if the subject-matter is not within its jurisdiction, or where it appears, from the conviction itself, that they have been guilty of an excess, or have decided on matters beyond and not within their jurisdiction, all is void, and their judgments, or sentences, are regarded in law as nullities. They constitute no justification; and all persons concerned in executing such judgments, or sentences, are trespassers, and liable to an action thereon." (1 Peters, 340; 2 Peters, 169; Griffith *v.* Frazier, 8 Cranch, 9; 14 How., 144; Wicks *v.* Caulk, 5 Harris and Johns., 42; Bigelow *v.* Stearns, 19 Johns., 39; Case of the Marshalsea, 10 Co. R., 76; Terry *v.* Huntington, Hardres R., 480; Shergold *v.* Hollway, 2 Strange, 1002; Hill *v.* Bateman, 1 Strange, 710; Perkin *v.* Proctor, 2 Wilson, 382; Dr. Bouchier's Case, cited, 2 Wilson, 386; Martin *v.* Marshall and Key, cited, 2 Wilson, 386; Parsons *v.* Lloyd, 3 Wilson, 341; Miller *v.* Seare, 2 Wm. Black. R., 1145; Crepps *v.* Durden, Cowp., 640; Groome *v.* Forrester, 5 M. and S., 314; Warne *v.* Varley, 6 Term, 443; Brown *v.* Compton, 8 Term, 424; Moravia *v.* Sloper, Willes R., 30; Peacock *v.* Bell, 1 Saunders, 74; 8 Term, 178; 2 Wm. Black., 1035; The King *v.* Dugger, 1 Dowl. Ry., 460; 3 Campbell's R., 388; Doswell *v.* Impy, 1 Barn. and Cress., 169; 13 Johns., 444.)

"A court martial is one of those inferior courts of limited jurisdiction whose judgments may be questioned collaterally.

It is an inferior court in the most technical common-law sense of those words. It is called into existence for a special and limited purpose, and to perform a particular duty; and when the object of its creation is accomplished, it ceases to exist. The law will intend nothing in its favor. The decision of such a tribunal, in a case without its jurisdiction, cannot protect the officer who executes it. The court and the officer are all tres-passers." (Wise *v.* Withers, 3 Cranch, 337; *Ex parte* Wat-kins, 3 Peters, 208; Mills *v.* Martin, 19 Johns., 32; Smith *v.* Shaw, 12 Johns., 267; Brooks *v.* Adams, 11 Pickering, 442; Duffield *v.* Smith, 3 Sergt. and Rawle, 599; 3 Greenleaf's Ev., § 470; Warden *v.* Baily, 4 Taunt., 67; Frye *v.* Ogle, 1 McAr-thur, Ap., No. 24, and Hickman, Ap., No. 17; Moore *v.* Bas-tard, 2 McArthur, 194, 200; 1 McArthur, chap. 10, § 9, p. 264, 272; Hannaford *v.* Hunn, 2 Carr. and Payne, 148; Wharton's American Law of Homicide, p. 52.)

Two essential vices appear on the face of the proceedings of the court martial in question, either of which would alone render their whole proceedings irregular and void.

1. The finding was in a cause *coram non judice*, it being for an offence of which the plaintiff was never charged, and of which the court had no cognizance.

2. The subject-matter of the sentence, the punishment in-flicted, was not within their jurisdiction, and is a punishment which they had no sort of permission or authority of law to inflict. (See Hickman, p. 149, 152, and 1 McArthur, 158.)

1st. The court martial was brought into existence by the order or precept of the Secretary of the Navy, and the plain-tiff "legally brought before it," for the trial of his guilt or innocence of the following "charge and specification of a charge preferred by the Secretary of the Navy," and to no other legal intent or purpose whatsoever:

" *Charge.*—Desertion.

" *Specification.*—In this, that on or about the twelfth day of September, in the year 1854, the said Frank Dynes deserted from the United States ship Independence, at New York.

"J. C. DOBBIN, *Secretary of the Navy.*"

Now, here is a charge, with its specification, drawn up with every desired legal requisite of certainty and perspicuity, noti-fying the accused of the circumstances and facts to be brought in issue, and warning him of the evidence essential to establish his innocence. Of this charge, and of this charge only, had the court martial jurisdiction to try him, (see 2 McArthur, p. 221;) and their decision as to his guilt or innocence upon this charge, would be as absolute and final as would be the decision of any other court on matters within their jurisdiction.

But the court martial acquitted him of the only charge legally brought before them, the only subject-matter whereof they had cognizance, but found him guilty of another offence, of which they had no sort of jurisdiction—an offence as yet unknown to the law, not enumerated in the naval articles as one of the crimes within the cognizance of a court martial—thus convicting him of an offence not included in the charge or specification before the court, but a new offence, depending upon different facts and circumstances, and against the accusation of which they gave him not the least time or slightest warning to defend himself.

The finding of the court was as follows:

The court "do find the accused, Frank Dynes, seaman of the United States navy, as follows: Of the specification of the charge, guilty of attempting to desert; of the charge, not guilty of deserting, but guilty of attempting to desert."

This finding is in direct violation of the oath which, by the 36th article of the act of Congress for the government of the navy, each member of the court is required to take, "before proceeding to trial," that he "will truly try, without prejudice or partiality, the case now depending." And of the 38th article, which declares that "all charges on which an application for a general court martial is founded, shall be exhibited in writing to the proper officer, and the person demanding the court shall take care that the person accused be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest; nor shall any other charge or charges than those so exhibited be urged against the person to be tried before the court," unless under the circumstances there enumerated, "in which case reasonable time shall be given to the person to be tried, to make his defence against such new charge." (See Macomb on Courts Martial, § 35 and § 36, p. 26; De Hart, p. 102; Tytler, 217.)

It is true that, at common law, the jury may frequently find the prisoner guilty of a minor offence, included in the charge, or of a part of the offence therein specified; as on an indictment for petit treason he may be found guilty of murder or of manslaughter, for both these offences are included in the charge, as is also the offence of manslaughter in the charge of murder; and under an indictment charging an assault with intent to murder the party, may be convicted of a simple assault only; or under an indictment charging an assault with intent to abuse and carnally know, the defendant may be convicted of an assault with intent to abuse simply. (1 Chitty's Crim. Law, 250, 251.)

In these cases, every fact and circumstance which is a neces-

sary ingredient in the offence is set forth in the indictment, and the party is enabled to determine the species of offence he will be called upon to answer, and the evidence necessary to establish his innocence.

But on an indictment for felony he cannot be convicted of a misdemeanor, because the offences are distinct in their nature, and of a distinct legal character.

Nor can a party be convicted, on an indictment for a specific offence, of an attempt to commit that offence. (4 Blac. Com., p. 306, note.) Thus, on an indictment for burglariously breaking and entering a dwelling-house and stealing the goods mentioned, the party may be acquitted of the burglary, and convicted of the larceny, it being included in the charge; but he cannot be acquitted of the burglary and stealing, and convicted of a burglary with intent to steal, or to commit any other felony, for they are distinct offences. (See Vandercomb and Abbott's case, 2 Leach C. L., 828 to 833; 1 Russell on Crimes, 831; Com. *v.* Roby, 12 Pickering, 505, 506, 507; 4 Blac. Com., 306, note.)

So, on an indictment for murder, he cannot be acquitted of the murder, and convicted of an assault with intent to murder. He is before the court charged with a specific offence, and is prepared only to defend himself against that charge, and the matter therein specified; he may entirely rely upon the evidence of the very man of whose murder he is charged to prove that no homicide has been committed. It would then be in violation of every principle of law to convict him, without warning, of a different offence, depending on different facts and circumstances; thus the fundamental doctrine of the law requires the proof admissible, much less the finding or verdict, to correspond with the allegations, and to be confined to the point in issue.

Courts martial, following these principles of the common law, may also find a party guilty of a minor offence included in the charge. As on a charge of desertion, they may acquit of that charge, and find the party guilty of "absence without leave," for this offence is of a like nature, and all its ingredients are included in the charge, for absence is the principal question in issue. (Tytler, 321, 322, 323; Adie, 185, 186, 187.) But attempting to desert is altogether a distinct offence, depending upon different facts and circumstances, of which the party has had no notice. He may be conscious of not having deserted, and may expect to establish his innocence of that charge by circumstances and facts which would render his being guilty of such an offence absolutely impossible. Then would it not be of the very essence of tyranny, in violation of

all those immutable principles of right and justice which are the foundation of martial as well as every other law, to find him guilty, and to inflict a punishment for this other offence never before the court, and of which he never had the least time or notice to make his defence?

Besides, "absence without leave" is, by the British mutiny act, and the 21st article of the act of Congress for the government of the army, (April 10, 1806, 2 Stat. at Large, p. 362,) made a military offence within the cognizance of an army court martial.

But "attempting to desert" is not enumerated by the articles for the government of the navy as an offence within the cognizance of a naval court martial. A naval court martial derives its sole being from, and is the mere creature of, the act of Congress, and has no jurisdiction of any other offences than such as are therein enumerated as within their cognizance. "When a new court is erected, it can have no other jurisdiction than that which is expressly conferred, for a new court cannot prescribe." (4 Inst., 200.)

But it may be contended that the 32d article covers this offence, which article is in these words: "All crimes committed by persons belonging to the navy, which are not specified in the foregoing articles, shall be punished according to the laws and customs at sea." Such a construction would be leaving the definition of crimes "at sea" indeed, and a shoreless and uncharted sea, and would render the previous minute enumeration of what offences might be tried and punished by a court martial quite useless. The probable proper construction to put on this article is, that it refers to such offences as are not of sufficient magnitude to be punished by a court martial, and leaves them to be punished according to the usages of the sea. However this may be, the offence at any rate should have been legally brought before the court by a charge and specification preferred by the proper authority, and it might then have been within the jurisdiction of the court to have decided whether or not they could take cognizance of it under the 32d article; as it is, the cause was *coram non judice*, and their judgment and sentence is not voidable, but absolutely void. (Hickman, 179, 149; 1 McArthur, 171; 2 ib., 221, 298, 199.)

The ground on which the judgment of the House of Lords, in the Banbury case, was held not to conclude the question, "was because the proper course had not been pursued to bring the question of peerage in judgment before the Lords, and therefore it was *coram non judice*, for the resolutions of the Lords, in that case, were taken upon a petition from the de-

fendant to the House itself; whereas, the proper course for the trial of the right of peerage is by petition from the claimant to the King, who thereupon refers it to the Lords." "Here was no judgment. A court can give no judgment in a thing not depending, or that does not come in a judicial way before the court." (2 Salk., 511; Burdett *v.* Abbott, 14 East, 106; Skinner R., 522, 524.)

"If a judge of an ecclesiastical court excommunicates a party for a cause of which he hath not legal cognizance, or where the party has not been previously served with a citation or monition, nor had due notice, an action lies against him." (Beaurain *v.* Scott, 3 Campbell's R., 388; 3 Black. Comm., 101.)

The argument of *Mr. Jones* and that of *Mr. Gillet,* upon the legality of using the penitentiary as the place of punishment, are omitted.

*Mr. Gillett* made the following points:

FIRST.—*The naval court martial had jurisdiction of the offence of which the plaintiff was convicted.*

Among the powers conferred upon Congress by the 8th section of the first article, are the following:

"To provide and maintain a navy.

"To make rules for the government and regulation of the land and naval forces."

The 8th amendment, which requires a presentment of a grand jury in cases of capital or otherwise infamous crime, expressly excepts from its operation "cases arising in the land or naval forces."

These provisions show that Congress has the power to provide for the trial and punishment of military and naval offences in the manner then and now practiced by civilized nations.

In the exercise of the powers thus conferred upon the legislative department, the act of the 23d of April, 1820, (2 U. S. L., p. 45,) was passed.

The 17th article of said act provides—

"And if any person in the navy shall desert, or entice others to desert, he shall suffer death, or such other punishment as a court martial shall adjudge."

The 32d provides—

"All crimes committed by persons belonging to the navy, which are not specified in the foregoing articles, shall be punished according to the laws and customs in such cases at sea."

Congress specified a limited number of offences, and among

them desertion; and then, in the thirty-second article, made provision for all possible cases which could occur in the naval service.

Among the offences which may be committed, is the attempt to desert. Desertion is where a person, bound by his enlistment to remain in service, in violation of his duty escapes from the control of those in command. An attempt to desert is where the motive to desert is conceived, and an effort made to carry it into effect, but which is not fully accomplished, owing to the want of success, or to a change of purpose. Such an offence deserves punishment in a degree but little below successful desertion. It is clearly one of the unspecified offences provided for in the 32d article.

The 35th article provides for the appointment of courts martial. These courts are created for the purpose of trying all cases arising in the naval service.

The 38th article provides, that charges shall be made in writing, which was done in this case. It appears, by the record, that the court was lawfully constituted; that the charge was made in writing; that Dynes appeared and pleaded to the charge. If he had been found guilty of desertion, no complaint could have been made against the conviction for want of jurisdiction in the court. But, as it appears that the court, instead of finding him guilty of the high offence of desertion, which authorizes the punishment of death, convicted him of the inferior offence of attempting to commit the crime, it is assumed that the court had no jurisdiction of the case. This assumption cannot be sustained.

It is a well-settled rule, that where a person is charged with a high offence, he may be convicted of a lower one of the same class.

In the People *v.* Jackson, 3 Hill N. Y. R., 92, Cowen, J., in delivering the opinion of the Supreme Court, said:

"The case is, in principle, like a conviction of manslaughter under an indictment for murder; or of simple larceny, under an indictment for burglary or robbery. The indictment charges facts enough, and more than enough, to make out a misdemeanor; and the prosecution in such case is never holden to fail, merely because all the alleged circumstances are not proved, if such as are proved make out a crime, though of an inferior degree. This has been uniformly held by the English courts, where the crime proved is of the same generic character with that charged; for instance, where the proof is of an inferior felony, and the indictment charges a higher."

In the People *v.* White, 22 Wen., 167, 176, the Supreme Court of New York laid down the same rule.

Roscoe, in his work on Criminal Evidence, p. 99, cites numerous cases to prove that this rule is correct and sound.

The same principles are laid down in Phillipps's Evidence, p. 203.

In Chitty's Criminal Law, 1st vol., pp. 250, 251, the same rule is stated, and many cases cited to prove it correct.

These rules are equally applicable to court-martial cases.

Writers on courts martial lay down similar rules.

O'Brien says: "When the offence named in the charge admits of less degrees of criminality, the court may find the specification to amount to only one of these lesser degrees of the same crime." P. 265.

. De Hart says: "In the deliberation of the court upon the finding to be declared, it is necessary also to observe the distinctions which may be made between the crime as alleged in the charge, and the degree of offence proved. A court martial, therefore, may in some instances find a prisoner guilty of the offence in a less degree than that stated. For example, a prisoner charged with desertion may be acquitted of the charge, and found guilty of absence without leave. Here it is manifest that the offence proved is of the same character as the one charged, but differing in degree, arising from the intention of the accused party. So, in all such, or similar findings of a court martial, must there exist a kindred nature between the offences, as it would clearly be a violation of justice to find a prisoner guilty of a crime differing in kind, and therefore not depending upon degree of culpability, from that with which he stands charged."

"It is evident, too, that as a prisoner stands charged with a specific offence, and necessarily defends himself from the accusation as laid, a court martial, although empowered to find him guilty in a less degree, cannot find a higher degree of guilt than that alleged in the charge." Pp. 184, 185.

Simmons says: "It is scarcely necessary to remark, that the punishments peculiar to desertion cannot be awarded on conviction of *absence without leave*, however aggravated; and that an offender, charged with desertion, may be found guilty of the minor crime, absence without leave, and receive judgment accordingly." Pp. 338, 339.

These authorities show that the same rule which prevails in the judicial courts is applied by military tribunals, where less technical nicety prevails. The great object in view in courts martial is to secure justice in the simplest manner possible. De Hart says, (p. 146,) "The same technical nicety which courts of civil jurisdiction observe in criminal cases is not desirable or necessary in the proceedings of a court martial, and

exceptions made to form or matter are only admitted by them when such appear essential to abstract justice." Certainly, abstract justice does not, in this case, require technical nicety. Justice has been fully administered, in a manner common to criminal tribunals and courts martial, and then no error has been committed.

The authorities above cited show that, on a charge for a higher offence, the accused could be tried and convicted of a less one of the same generic character. Were this not so, if the proof failed to show the accused guilty of the higher offence, he would escape all punishment, as the trial and acquittal for such higher offence might be pleaded in bar to an indictment for the inferior one. The court having had unquestioned jurisdiction in the case presented in the charge and specification contained in the record, it clearly included whatever could be tried under them. The cases show that the accused could be tried for the lesser offence covered by the more extensive one, formally presented against him. It follows, that the court had ample jurisdiction to try and determine it. Having the authority to try the plaintiff, the decision upon the question of his guilt is conclusive upon him, and is not the subject of review in this court; though, if it were, its correctness would not be questioned after reading the evidence.

SECOND.—*As the court had jurisdiction, no errors committed in its exercise can be reviewed or corrected by this court.*

Courts martial have original jurisdiction in all offences committed by persons in the naval service, when convened according to law, and such offences are brought to their consideration in the manner specified in the statute. No reviewing tribunal has been established, although the Secretary of the Navy and the President, in effect, act as revising officers, where their concurrence is required before the adjudication of the court can be carried into effect. The decisions of courts martial are as conclusive as those of any other tribunal. Their jurisdiction is general over a class, and is exclusive as to all naval offences. Whether they exercise it wisely or erroneously, while they keep within such jurisdiction, is not the subject of review by other courts. The matter becomes *res judicata.*

In this case, the question of the guilt of the plaintiff is finally and conclusively settled. The court had full power to direct punishment. In some cases the statute defines that punishment, but it is generally left to the discretion of the court trying the accused.

The plaintiff insists that the court exceeded its jurisdiction in requiring him to be imprisoned for six months, at hard labor, in the penitentiary of the District of Columbia. The 32d arti-

cle of the act of 1800 is referred to as proof of this. It is in these words:

"All crimes committed by persons belonging to the navy, which are not specified in the foregoing articles, shall be punished according to the laws and customs in such cases at sea."

It is contended by the plaintiff, that the punishment adjudged is not according to the laws and customs in such cases at sea. But this does not appear. Those prescribed in the statute itself are applicable to the cases therein specified. The present case relates to those not distinctly enumerated in the statute, but to such as are authorized by the laws and customs in cases at sea. Who shall determine this question? Is it a question of law, or of fact?

If it is a question of law, it was clearly one for the court martial sitting to determine, and their decision is final, and not reviewable here. It was the duty of that court to pass upon this very question, when they were determining the punishment to be inflicted. It was clearly within their jurisdiction, and it was their duty to consider and pass upon it. They did so, and their decision is binding upon the parties to that trial, and cannot be reviewed here.

If it were a question of fact, it was equally the duty of the court martial to consider and determine it upon the evidence before them; and that determination is equally conclusive as if it were a question of law.

It is clear, that the question of punishments authorized by the laws and customs of sea is one purely of fact. Such customs and laws are not written in books, but exist as matters of fact, resting in tradition and practice. This court cannot know them as a matter of law, and certainly not as a matter of fact. How can this court say that imprisonment at hard labor is not a common punishment for offences, where not specified in the statute, in case of offences at sea? Imprisonment is clearly one mode of punishment for many offences known to our laws, including those regulating the naval service, although not specified in words. There are some thirty crimes specified in the statute, where the punishment is within the discretion of the court martial. This may be, by being shut up in the hold, or confined on the deck of a ship, or confinement at such place, at sea or on land, as the court think proper. The sentence may include hard labor or not, at the discretion of the court.

There is nothing in the statute to show that the undefined crimes and punishments may not be dealt with in the same manner. No law or usage is shown in the record on this subject. It follows, that there is no law or usage to restrain the

court in relation to the punishment that may be inflicted in the non-enumerated cases. If the plaintiff had believed that, in adjudicating the punishment, the court martial had exceeded the customary and lawful punishment for such offences, he should have framed an issue of fact upon that point, and have gone to the jury upon it, instead of raising an issue of law; where such fact cannot be determined. Instead of doing so, he comes here and asks this court to determine, as a matter of fact, the laws and usages of the sea, where the statute has failed to define them. This court cannot be lawfully called upon, in suits of law, to pass upon any such question.

The very points now in dispute were legitimately before the court martial for its determination. The accused could be heard upon all questions of law and fact. He gave such evidence, as to both, as he saw fit. The court considered the case as presented, and disposed of these same questions as a part of its duty, and thus they become finally and conclusively settled; and the proceeding having been approved by the Secretary, this court is bound to consider them rightfully settled. But, if it should not, still the adjudication is binding upon it. This view of the case is sustained by the highest authority.

In Martin *v.* Mott, 12 Wheat., pp. 19, 29, 30, this court held that "the authority to decide whether the exigencies contemplated in the Constitution of the United States and the act of Congress of 1795, in which the President has authority to call forth the militia 'to execute the laws of the Union, suppress insurrections, and repel invasions,' have arisen, is exclusively vested in the President, and his decision is conclusive upon all other persons."

In Watkins case, 3 Peters, 193, p. 202, the question of the effect of a judgment was fully considered in this court. In delivering the opinion, Story, J., said:

"A judgment, in its nature, concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a court of record, whose jurisdiction is final, is as conclusive on all the world as the judgment of this court would be. It is as conclusive on this court as it is on other courts. It puts an end to inquiry concerning the fact, by deciding it."

In Wilcox *v.* Jackson, 13 Peters, 498, p. 511, this court, speaking of the conclusiveness of judgments, said:

"This proposition is true in relation to every tribunal acting judicially, whilst acting within the sphere of their jurisdiction, where no appellate tribunal is created; and even when there is such an appellate power, the judgment is conclusive when it only comes collaterally into question, so long as it is unreversed."

In Elliott *v.* Piersol, 1 Peters, 328, p. 340, this court held: "Where a court has jurisdiction, it *has a right to decide every question which occurs in the cause;* and whether its decisions be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court."

Mr. Justice WAYNE delivered the opinion of the court.

The plaintiff brought an action for assault and battery and false imprisonment, charging that the defendant imprisoned him in the penitentiary of the District of Columbia. The defendant pleaded the general issue, and several special pleas, in which he denied the force and injury, and set up, that he, as marshal of the District of Columbia, imprisoned the plaintiff by virtue of the authority of the President of the United States, in the execution of a sentence of a naval court martial, convened under an act of Congress of the 23d of April, 1800; which sentence was approved by the Secretary of the Navy, which was final and absolute, and denying the jurisdiction of the court. The plaintiff filed a retraxit, admitting that there was no battery, other than the imprisonment in pursuance of the sentence of the court martial.

The charge by the Secretary of the Navy was desertion, with this specification: "that on or about the twelfth day of September, in the year of our Lord one thousand eight hundred and fifty-four, Frank Dynes deserted from the United States ship Independence, at New York." He pleaded not guilty. After hearing the evidence, the court declared, "We do find the accused, Frank Dynes, seaman of the United States navy, as follows: Of the specification of the charge, guilty of attempting to desert; of the charge, *not guilty of deserting,* but guilty of *attempting to desert;* and the court do thereupon sentence the said Frank Dynes, a seaman of the United States navy, to be confined in the penitentiary of the District of Columbia, at hard labor, without pay, for the term of six months from the date of the approval of this sentence, and not to be again enlisted in the naval service." This conviction and sentence was approved by the Secretary of the Navy, on the 26th of September, 1854. The prisoner was then brought from New York to Washington, *in custody;* and the President, reciting the trial and sentence, made the following order upon the defendant, the marshal, in relation to carrying the judgment of the court into execution. "The prisoners above named (the plaintiff, Dynes, being one among others) having been brought to the city, by direction of the Secretary of the Navy, in the United States steamer Engineer, you are hereby directed to receive them from the commanding officer of said vessel, and commit them

to the penitentiary in the District of Columbia, in accordance with their respective sentences." These facts formed a portion of the defendant's pleas, to which the plaintiff demurred, pointing out the following causes of demurrer:

1. Because the said court martial had no jurisdiction or authority whatever to pass such sentence as that pleaded and set forth in said plea.

2. Because the sentence is illegal and void.

3. Because the President of the United States had no jurisdiction or authority whatever to write such a letter to the defendant as that pleaded and set forth in said plea, nor in any manner whatever to direct the defendant to commit the plaintiff to the penitentiary in the District of Columbia, in accordance with said sentence.

4. Because the said letter, and the said directions therein contained, are unconstitutional, illegal, and void.

5. Because the said plea is altogether vicious and insufficient in law, and wants form.

There was a joinder in demurrer and judgment for the defendant.

This presents the question, whether the defendant, as marshal, was authorized to execute the direction to receive the plaintiff, then in custody of the captain of the United States steamer Engineer, to deliver him to the keeper of the penitentiary of the District of Columbia.

The demurrer admits that the court martial was lawfully organized; that the crime charged was one forbidden by law; that the court had jurisdiction of the charge as it was made; that a trial took place before the court upon the charge, and the defendant's plea of not guilty; and that upon the evidence in the case the court found Dynes guilty of an attempt to desert, and sentenced him to be punished, as has been already stated; that the sentence of the court was approved by the Secretary, and that by his direction Dynes was brought to Washington; and that the defendant was marshal for the District of Columbia, and that in receiving Dynes, and committing him to the keeper of the penitentiary, he obeyed the orders of the President of the United States in execution of the sentence. Among the powers conferred upon Congress by the 8th section of the first article of the Constitution, are the following: "to provide and maintain a navy;" "to make rules for the government of the land and naval forces." And the 8th amendment, which requires a presentment of a grand jury in cases of capital or otherwise infamous crime, expressly excepts from its operation "cases arising in the land or naval forces." And by the 2d section of the 2d article of the Constitution it is declared that

"The President shall be commander-in-chief of the army and navy of the United States, and of the militia of the several States when called into the actual service of the United States."

These provisions show that Congress has the power to provide for the trial and punishment of military and naval offences in the manner then and now practiced by civilized nations; and that the power to do so is given without any connection between it and the 3d article of the Constitution defining the judicial power of the United States; indeed, that the two powers are entirely independent of each other.

In pursuance of the power just recited from the 8th section of the first article of the Constitution, Congress passed the act of the 23d April, 1800, (2 Stat. at Large, 45,) providing rules for the government of the navy. The 17th article of that act is: "And if any person in the navy shall desert or entice others to desert, he shall suffer death, or such other punishment as a court martial shall adjudge." The 32d article is: "All crimes committed by persons belonging to the navy, which are not specified in the foregoing articles, shall be punished according to the laws and customs in such cases at sea." The 35th article provides for the appointment of courts martial to try all offences which may arise in the naval service. The 38th article provides that charges shall be made in writing, which was done in this case. The court was lawfully constituted, the charge made in writing, and Dynes appeared and pleaded to the charge. Now, the demurrer admits, if Dynes had been found guilty of desertion, that no complaint would have been made against the conviction for want of jurisdiction in the court. But as it appears that the court, instead of finding Dynes guilty of the high offence of desertion, which authorizes the punishment of death, convicted him of attempting to desert, and sentenced him to imprisonment for six months at hard labor in the penitentiary of the District of Columbia, it is argued that the court had no jurisdiction or authority to pass such a sentence; in other words, in the language of the counsel of the plaintiff in error, that "the finding was *coram non judice*, it being for an offence of which the plaintiff was never charged, and of which the court had no cognizance. That the subject-matter of the sentence, the punishment inflicted, was not within their jurisdiction, and is a punishment which they had no sort of permission or authority of law to inflict."

But the finding of the court against the prisoner was what is known in the administration of criminal law as a *partial verdict*, in which the accused is acquitted of a part of the accusation against him, and found guilty of the residue. As when there is an acquittal on one count, and a verdict of guilty on

another. Or when the charge is ot a higher degree, including one of a lesser, there may be a finding by a *partial verdict* of the latter. As upon a charge of burglary, there may be a conviction for a larceny, and an acquittal of the nocturnal entry. So, upon an indictment for murder, there may be a verdict of manslaughter, and robbery may be reduced to simple larceny, and a battery into an assault.

The objection is ingeniously worded, was very ably argued, and, we may add, with a clear view and knowledge of what the law is upon such a subject, and how the plaintiff's case must be brought under it, to make the defendant responsible on this action for false imprisonment. But it substitutes an imputed error in the finding of the court for the original subject-matter of its jurisdiction, seeking to make the marshal answerable for his mere ministerial execution of a sentence, which the court passed, the Secretary of the Navy approved, and which the President of the United States, as constitutional commander-in-chief of the army and navy of the United States, directed the marshal to execute, by receiving the prisoner and convict, Dynes, from the naval officer then having him in custody, to transfer him to the penitentiary, in accordance with the sentence which the court had passed upon him. And this upon the principle, that where a court has no jurisdiction over the subject-matter, it tries and assumes it; or where an inferior court has jurisdiction over the subject-matter, *but is bound to adopt certain rules in its proceedings, from which it deviates, whereby the proceedings are rendered coram non judice,* that trespass for false imprisonment is the proper remedy, where the liberty of the citizen has been restrained by process of the court, or by the execution of its judgment. Such is the law in either case, in respect to the court, which acts without having jurisdiction over the subject-matter; or which, having jurisdiction, disregards the rules of proceeding enjoined by the law for its exercise, so as to render the case *coram non judice.* (Cole's case, John. W., 171; Dawson *v.* Gill, 1 East., 64; Smith *v.* Beucher, Hardin, 71; Martin *v.* Marshall, Hob., 68; Weaver *v.* Clifford, 2 Bul., 64; 2 Wils., 385.) In both cases, the law is, that an officer executing the process of a court which has acted without jurisdiction over the subject-matter becomes a trespasser, it being better for the peace of society, and its interests of every kind, that the responsibility of determining whether the court has or has not jurisdiction should be upon the officer, than that a void writ should be executed. This court, so far back as the year 1806, said, in the case of Wise and Withers, 3 Cr., 331, p. 337 of that case, "It follows, from this opinion, that a court martial has no jurisdiction over a justice of the

peace as a militiaman; he could never be legally enrolled; and *it is a principle*, that a decision of such a tribunal, in a case *clearly without its jurisdiction*, cannot protect the officer who executes it. The *court and the officer are all trespassers.*" (2 Brown, 124; 10 Cr., 69; Mark's Rep., 118; 8 Term R., 424; 4 Mass. R., 234.)

I add two cases from the 2d of Horace Gray's reports of the Supreme Judicial Federal Court of Massachusetts, furnished me by Mr. Justice Campbell, of Pifer *v.* Person, 120; Clark *v.* Whipple, in May and Kent, 410.

But the case in hand is not one of a court without jurisdiction over the subject-matter, or that of one which has neglected the forms and rules of precedure enjoined for the exercise of jurisdiction. It was regularly convened; its forms of procedure were strictly observed as they are directed to be by the statute; and if its sentence be a deviation from it, which we do not admit, it is not absolutely void. Whatever the sentence is, or may have been, as it was not a trial by court martial taking place out of the United States, it could not have been carried into execution but by the confirmation of the President, had it extended to loss of life, or in cases not extending to loss of life, as this did not, but by the confirmation of the Secretary of the Navy, who ordered the court. And if a sentence be so confirmed, it becomes final, and must be executed, unless the President pardons the offender. It is in the nature of an appeal to the officer ordering the court, who is made by the law the arbiter of the legality and propriety of the court's sentence. When confirmed, it is altogether beyond the jurisdiction or inquiry of any civil tribunal whatever, unless it shall be in a case in which the court had not jurisdiction over the *subject-matter or charge*, or one in which, having jurisdiction over the subject-matter, it has failed to observe the rules prescribed by the statute for its exercise. In such cases, as has just been said, all of the parties to such illegal trial are trespassers upon a party aggrieved by it, and he may recover damages from them on a proper suit in a civil court, by the verdict of a jury.

Persons, then, belonging to the army and the navy are not subject to illegal or irresponsible courts martial, when the law for convening them and directing their proceedings of organization and for trial have been disregarded. In such cases, everything which may be done is void—not voidable, but void; and civil courts have never failed, upon a proper suit, to give a party redress, who has been injured by a void process or void judgment. In England, it has been done by the civil courts, ever since the passage of the 1 Mutiny act of William and Mary, ch. 5, 3d April, 1689. And it must have been with

a direct reference to what the law was in England, that this court said, in Wise *v.* Withers, 3 Cr., 337, that in such a case "the court and the officers are all trespassers." When we speak of *proceedings* in a cause, or for the organization of the court and for trials, we do not mean mere irregularity in practice on the trial, or any mistaken rulings in respect to evidence or law, but of a disregard of the essentials required by the statute under which the court has been convened to try and to punish an offender for an imputed violation of the law.

Courts martial derive their jurisdiction and are regulated with us by an act of Congress, in which the crimes which may be committed, the manner of charging the accused, and of trial, and the punishments which may be inflicted, are expressed in terms; or they may get jurisdiction by a fair deduction from *the definition of the crime* that it comprehends, and that the Legislature meant to subject to punishment one of a minor degree of a kindred character, which has already been recognised to be such by the practice of courts martial in the army and navy services of nations, and by those functionaries in different nations to whom has been confided a revising power over the sentences of courts martial. And when offences and crimes are not given in terms or by definition, the want of it may be supplied by a comprehensive enactment, such as the 32d article of the rules for the government of the navy, which means that courts martial have jurisdiction of such crimes as are not specified, but which have been recognised to be crimes and offences by the usages in the navy of all nations, and that they shall be punished according to the laws and customs of the sea. Notwithstanding the apparent indeterminateness of such a provision, it is not liable to abuse; for what those crimes are, and how they are to be punished, is well known by practical men in the navy and army, and by those who have studied the law of courts martial, and the offences of which the different courts martial have cognizance. With the sentences of courts martial which have been convened regularly, and have proceeded legally, and by which punishments are directed, not forbidden by law, or which are according to the laws and customs of the sea, civil courts have nothing to do, nor are they in any way alterable by them. If it were otherwise, the civil courts would virtually administer the rules and articles of war, irrespective of those to whom that duty and obligation has been confided by the laws of the United States, from whose decisions no appeal or jurisdiction of any kind has been given to the civil magistrate or civil courts. But we repeat, if a court martial has no *jurisdiction over the subject-matter of the charge* it has been convened

to try, or shall inflict a punishment *forbidden by the law,* though its sentence shall be approved by the officers having a revisory power of it, *civil courts* may, on an action by a party aggrieved by it, inquire into the want of the court's jurisdiction, and give him redress. (Harman *v.* Tappenden, 1 East., 555; as to ministerial officers, Marshall's case, 10 Cr., 76; Morrison *v.* Sloper, Wells, 30; Parton *v.* Williams, B. and A., 330; and as to justices of the peace, by Ld. Tenterden, in Basten *v.* Carew, 3 B. and C., 653; Mules *v.* Calcott, 6 Bins, 85.)

Such is the law of England. By the mutiny acts, courts martial have been created, with authority to try those who are a part of the army or navy for breaches of military or naval duty. It has been repeatedly determined that the sentences of those courts are conclusive in any action brought in the courts of common law. But the courts of common law will examine whether courts martial have exceeded the jurisdiction given them, though it is said, "not, however, after the sentence has been ratified and carried into execution." (Grant *v.* Gould, 2 H. Black, 69; Ship Bounty, 1 East., 313; Shalford's case, 1 East., 313; Mann *v.* Owen, 9 B. and C., 595; in the matter of Poe, 5 B. and A., 681, on a motion for a prohibition.) A judge, or any person acting by authority as such, where he has over the subject-matter, and over the person, a general jurisdiction which he nas not exceeded, will not be liable to have his judgment examined in an action brought against himself; but if jurisdiction be wanting over the subject-matter, and over the person, such judgment would be examinable. (Hammond *v.* Howel, 1 Mod., 184; Garnett *v.* Ferrand, 6 B. and C., 611; Moslyn *v.* Fabugas, Cow., 172; Bonham's case, 8 Co., 114; Greenwell *v.* Burwell, 1 Le Roy, 454; by Holt, C. J., 1 Le Roy, 470; Lumley *v.* Lance, 2 Le Roy, 767; Basten *v.* Carew, 3 B. and C., 649. The preceding cited cases relate to judges of record. As to judges not of record, ecclesiastical judges, Acherly *v.* Parkerson, 3 M. and S., 411. Commissioners of court of bequests, Aldridge *v.* Haines, 2 B. and Ad., 395. As to returning officer of election, Ashby *v.* White, 2 Ld. Raym., 941; Cullen *v.* Morris, 2 Start, 577.)

In this case, all of us think that the court which tried Dynes had jurisdiction over the subject-matter of the charge against him; that the sentence of the court against him was not forbidden by law; and that, having been approved by the Secretary of the Navy as a fair deduction from the 17th article of the act of April 23d, 1800, and that Dynes having been brought to Washington as a prisoner by the direction of the Secretary, that the President of the United States, as constitutional commander-in-chief of the army and navy, and in virtue of his

constitutional obligation, that "He shall take care that the laws be faithfully executed," violated no law in directing the marshal to receive the prisoner Dynes from the officer commanding the United States steamer Engineer, for the purpose of transferring him to the penitentiary of the District of Columbia; and, consequently, that the marshal is not answerable in this action of trespass and false imprisonment.

We affirm the judgment of the Circuit Court.

Mr. Justice McLean dissented.