Nott, Ch. J.,
delivered the opinion of the court.
This case presents the question whether an enlisted fireman in the Navy has bee.n lawfully deprived of his lawful pay by the sentence of a court-martial. Questions of military law, or the proceedings of military courts, rarely come before civil courts for review or as subjects of adjudication, but there are some general principles applicable to all cases which it is always well, when a court is passing upon the action of a court-martial, to keep prominently in view.
In Dinsman v. Wilkes (12 Howard R., 390, 403) the Supreme Court said:
“ It must bo borne in mind that the nation would be equally dishonored if it permitted the humblest individual in its service to be oppressed and injured by his commanding officer from malice or ill-will or the wantonness of power.”
And the Supreme Court said, in Dynes v. Hoover (20 Howard R., 65, 81):
“Persons, then, belonging to the Army and the Navy are not subject to illegal or irresponsible courts-martial, when *319 the law for convening them and directing their proceedings of organization and for trial have been disregarded. In such cases everything which may be done is void — not voidable, but void — and civil courts have never failed, upon a proper suit, to give a party redress who has been injured by a void process or void judgment. In England it has been done by the civil courts ever since the passage of the 1 Mutiny Act of William and Mary, ch. 5, 3d April, 1689. And it must have been with a direct reference to what the law was in England that this court said, in Wise v. Withers (3 Cr., 337), that in such a case ‘the court and the officers are all trespassers.’ When we speak of proceedings in a cause, or for the organization of the court and for trials, we do not mean mere irregularity in practice on the trial, or any mistaken rulings in respect to evidence or law, but of a disregard of the esseoitials required Toy the statute under which the court has Toeen convened to Pry cmd to punish aoi offender for an imputed violation of the laxo.'1'1
The Supreme Court again said, in Runkle v. United States (122 U. S. R., 513, 555, 558):
“A court-martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose and to perform a particular duty. When the object of its creation-has been accomplished it is dissolved. (3 Greenl. Ev., sec. 470; Brooks v. Adams, 11 Pick., 141, 442; Mills v. Martin, supra; Duffield v. Smith, 3 S. & R., 590, 599.) Such, also, is the effect of the decision of this court in Wise v. Withers (3 Cranch, 331), which, according to the interpretation given it by Chief Justice Marshall in Ex pa/rte Watkins (3 Pet., 193, 207), ranked a court-martial as ‘one of those inferior courts of limited jurisdiction wiiose judgments may be questioned collaterally.’ To give effect to its sentences it must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; that all the statutory regulations governing its proceedings had loeen complied xoith, and that its sentence was comformable to law. (Dynes v. Hoover, 20 How., 65, 80; Mills v. Martin, 19 Johns., 33.) There are no presumptions in its favor so far as these matters are concerned. As to them, the rule announced by Chief Justice Marshall in Brown v. Keene (8 Pet., 112, 115) in respect to averments of jurisdiction in the courts of the United States applies. His language is: ‘ The decisions of this court require that averment of jurisdiction shall be positive — that the declaration shall state expressly the fact on which jurisdiction depends. It is not sufficient that jurisdiction may be inferred, argumentative!}7, from its averments.’ All this is equally *320 true of the proceedings of courts-martial. Their authority is statutory, and the statute under which they proceed must be ■followed throughout. The facts necessary to show their jurisdiction and that their sentences were conformable to law must be stated positively, and it is not,enough that they be inferred argumentatively.
“Undoubtedly the President, in passing upon the sentence of a court-m.artial and giving to it the approval without which it can not be executed, acts judicially. The whole proceeding from its inception is judicial. The trial, finding, and sentence are the solemn acts of a court organized and conducted under the authority of and according to the prescribed forms of law. It sits to pass upon the most sacred questions of human rights that are ever placed on trial in a court of justice; rights which, in the very nafrare of things, can neither be exposed to da/nger nor subjected to the xmcontrolled-will of a/ny man, but which must be adjudged according to law.”
On the 17th July, 1862, Congress passed two statutes (12 Stat. L., p. 594; ib., pp. 600-604, art. 15), the one relating to the arrest and imprisonment of officers in the Army, the other to the arrest and imprisonment of persons in the Navy.
These statutes were passed in the midst of a great war, and concerning the circumstances which surrounded the former statute and led to its enactment, Mr. Blaine has said:
“In answer to the call upon the President for information, Mr. Lincoln sent a message to the Senate on the 1st of May, saying, ‘ General Stone was arrested and imprisoned under my general authority, and upon evidence which, whether he be guilty or innocent, required, as appears to me, such proceedings to be had against him for the public safety.’ The President deemed it ‘incompatible with the public interest, and perhaps unjust to General Stone, to make a particular statement of the evidence.’ After saying that General Stone had not been tried because the officers to constitute a court-martial could not be withdrawn from duty without serious injury to the service, the President gave this public assurance: ‘ He will be allowed a trial without unnecessary delay. The charges and specifications will be furnished him in due season, and every facility for his defense will be afforded him by the War Department.’ This message on its face bears evidence that it was prepared at the War Department, and that Mr. Lincoln acted upon assurances furnished by Mr. Stanton. The arrest was made upon his ‘general’ authority, and clearly not from any specific information he possessed. But the effect of the message was to preclude any further attempt at intervention by Congress. Indeed, the assurance that General Stone should *321 be tried‘without unnecessary delay’ was all that could be asked. But the promise made to the ear was broken to ..the hope, and General Stone was left to languish without a word of intelligence as to his alleged offense, and without the slightest opportunity to meet the accusers who, in the dark, had convicted him without trial, subjected him to cruel punishment, and exposed him to the judgment of the world as a degraded ei’iminal.
“Release from imprisonment came at last by the action of Congress, coercing the Executive Department to the trial or discharge of General Stone. In the act of July 17, 1862, ‘ defining the pay and emolument of certain'officers,’ a section was inserted declaring that ‘ whenever an officer shall be put under arrest, except at remote military posts, it shall be the dutj'' of the officer by whose orders he is arrested to see that a copy of the charges shall be served upon him within eight days thereafter, and that he shall be brought to trial within ten days thereafter unless the necessities of the service prevent such trial; and then he shall be brought to trial-within thirty days after the expiration of said ten days, or the arrest shall cease.’” (Twenty Years of Congress, vol. 1, p. 390.)
The statute relating to the Navy is without qualification, broader and more imperative in terms. It has since found its way into the Revised Statutes with no substantial change of phraseology, where it stands in these words:
“ The person accused shall be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest; and no other charges than those so furnished shall be urged against him at the trial unless it shall appear to the court that intelligence of such other charge had not reached the officer ordering the court when the accused was put under arrest, or that some witness material to the support .of such charge was at that time absent and can be produced at the trial, in which case reasonable time shall be given to the accused to make his defense against such new charge.” (Rev. Stat., 1624, art. 43, p. 283.)
This statutory provision, moreover, is a revision in 1862 of .one of the original rules and regulations for the government of the Navy, in these words:
“All charges on which an application for a general court-martial is founded shall be exhibited in writing to the proper officer, and the person demanding the court shall take care that the person accused be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest; nor shall any other charge or charges than those so ex *322 hibited bo urged against the person to be tried before the court unless it appear to the court that intelligence of such charge had not reached the person demanding the court when the person so to be tried was put under arrest,' or that some witness material to the support of such charge, who was at that time absent, can be produced; in which case reasonable time shall be given to the person to be tried to make his defense against such new charge.” (Act 23d April, 1800, 2 Stat. L., pp. 50-51, art. 38.)
The imperative words hero are that “ the person demanding the court shall take care that the person accused be furnished with a true copj'- of the charges,” not that the court-martial shall take care. Moreover, the Attorney-General had decided in 1845, in the case of Captain Yoorhees (4 Opins., pp. 410-414), that this provision of law applied only to cases where charges were preferred by one person against another. The language that the charges ‘1 shall be exhibited in writing to the proper officer,” i. e., the officer who had power to order the court-martial, and that “ the person demanding the court shall take care that the person accused be furnished with a true copy of the charges,” fully sustains the construction given to it by the Attorney-General. In a word, while General Stone’s arrest was receiving legislative attention and inquiry, Congress determined to change and reenact the navy article of 1800, and that change at that time must have been founded upon a legislative purpose.
In the present case it does not appear either bjr the record or dehors the record that the claimant was ever furnished with a copy of the charges. The nearest approach to furnishing him with a copy of the charges was, as appears by the logbook, that on the 1st of July the judge-advocate of the coming court-martial read specifications to J. Smith. The prisoner had then been in close confinement since the 26th of May, under an order directing- that “he be kept in single irons for safe-keeping- to await trial by general court-martial.”
The claimant has set up a good cause of action, that the defendants are indebted to him for wages in the amount of $200,- and the defendants by their demurrer have confessed that much. The.petition sets forth what are probably all the material facts of the case, and the defendants have confessed, those facts so far as properly pleaded, likewise by their *323 demurrer. If the record of the court-martial contains anjTthing which will avail the defendants as a defense in this suit it vTas in their possession, and it was for them to bring it in and set it up as a defense to the claimant’s cause of action. They not having done so, we must infer one substantial fact to be conceded, namely, that the claimant, who was arrested on the 26th of May and tried on the 5th of July, was never furnished with a copy of the charges and specifications upon which he was tried.
The question therefore presented to the court by this case is whether the act of 1862 — that is to say, article 43, Revised Statutes — is mandatory or directory; whether the requirement “that the person accused shall be furnished with a true copy of the charges,” and that “no other charges than those so furnished shall be urged against him at the trial,” is jurisdictional.
The Supreme Court, in the case of Dynes v. Hoover, (20 How. R., 65-79), seems impliedly to have answered that question. The plaintiff’s case there rested upon his alleged want of jurisdiction in the court-martial. The Supreme Court held that the court-martial had jurisdiction, and its opinion enumerates the statutory requisites. Among these is placed the thirty-eighth article of 1800, which, says the court, provides, “that charges shall be made in writing, which was done in this case. The court was lawfully constituted, the charge made in writing, and D3rnes appeared and pleaded to the charge.”
When so careful and learned a judge as Mr. Justice Wayne, after stating the law, is careful twice to state the fact that the charge was made in writing and that the prisoner “appeared and pleaded to the charge,” it is plain that the Supreme Court regarded the charges and specifications prescribed by the statute as analogous to an indictment in an ordinary criminal case.
The act of 1800, as has been stated, was neither so broad nor so imperative as the provision in the Revised Statutes. With this decision of the Supreme Court before us, concerning the narrower and weaker statute, it is impossible for this court to hold that the provision in the Revised Statutes realty means nothing at all. For, to say now in the face of that *324 statute that an officer or seaman in the Navy can be arrested by his commanding officer; that he can be kept in close confinement for as long a time as General Stone was, without charges being preferred against him; that he can be carried to the other side of the world from the spot where the alleged offense was committed, and be first informed of it when the charges against him are read during the proceedings of the court-martial, would be to say that Congress had made no provision whatever for preserving the personal rights and liberties of the officers and men in the American Navy.
Mariners, whether in the merchant service or in the Navy, are, in the words of Story (1 Eq. Juris., 332), “a strangely improvident class of men, who seem to have mixed up in their character qualities of very opposite natures, and who seem, from their habits, to require guardianship during the whole course of their lives, having at the same time great generosity, credulity, extravagance, heedlessness, and bravely.” “ Courts of equity,” he adds, “are always supposed to take an indulgent consideration of their interests and to treat them in the same light with which young heirs and'expectants are regarded. Hence it is that contracts of seamen'respecting their wages and prize money are watched with great jealousy, are generally relievable whenever any inequality appears in the bargain, or any undue advantage has been taken.” Lord Stowell, in the leading case of the Juliana (2 Dodson, 504), held that they should be relieved from the consequences of • their own act, that of signing shipping articles whereby their wages might be inequitably forfeited.
And there is good reason for this; for sailors when on shipboard are beyond the reach of a writ of habeas corpus; are without legal advice, and in the preparation of a defense without professional assistance, and on trial they come very near to being practically defenseless; for judge-advocates, like other men, can not well serve two masters. In courts of equity and in courts of admiralty and in legislative halls sailors have always been more or less subjects of protective jurisprudence or protective legislation, and to deprive a seaman of his wages one must proceed according to law and equity. In civil life a man can not be deprived of life, liberty, or property except by due process of law. In the Army and Navy *325 the proceedings are different, the safeguards are less assured, but the principle is the same. Neither Congress nor the courts have ever sanctioned arbitrary arrests or illegal imprisonment or the deprivation of a statutory right. And among the statutory rights which the military or naval prisoner has is that of being promptly informed of the offense whereof he stands accused. An entry on the log is not' notice to the prisoner, for ho has not access to the log. In the present case the seaman has been deprived of his wages — that is to say, of his property — and this court can not sair that it has been done according to the plain and just purpose of the statute, which was intended to guard the personal rights of officers and men in the Navy.
Other important questions were presented to the court by the counsel for the claimant on the argument, but the decision is confined to the question of jurisdiction above considered.
The judgment of the court is that the demurrer of the defendants be overruled, and that the claimant recover the amount conceded to be due, $200.
With leave, nevertheless, to the defendants to plead to the petition within thirty days, in which case the judgment now entered will be vacated and set aside.