**ROMERO v. SQUIER.**
No. 10242.

Circuit Court of Appeals, Ninth Circuit.
Jan. 29, 1943.

Writ of Certiorari Denied April 12, 1943.

See —— U.S. ——, 63 S.Ct. 982, 87 L.Ed. ——.

Pedro P. Semsen, of Washington, D. C., for appellant.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., Harry Sager, of Sumner, Wash., and G. D. Hile, Asst. U. S. Attys., of Seattle, Wash., for appellee.

Before GARRECHT, DENMAN and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from the judgment of the District Court for the Western District of Washington dismissing a petition for a writ of habeas corpus, in which appellant was the petitioner, and the appellee was the respondent. In the district court appellant contended that he was unlawfully imprisoned in the custody of the Warden, McNeil Island, Washington, under an order of commitment by a general court-martial at Fort William McKinley, Philippine Islands, on November 25, 1940, ordering that appellant be imprisoned for a period of 15 years. Appellant contends the conviction is in violation of Article IV and Article VI of the Amendments to the Constitution of the United States and of the Act of June 4, 1920, c. 227, subchap. II, Articles 17, 35, 70, 41 Stat. 790, 794, 802, 10 U.S.C.A. §§ 1488, 1506, 1542.

The charge before the court-martial was violation of the 96th Article of War, 10 U.S.C.A. § 1568, which provides, "§ 1568. *General article (article 96).* Though not mentioned in these articles, all disorders and neglects to the prejudice of good order and military discipline, all conduct of a nature to bring discredit upon the military service, and all crimes or offenses not capital, of which persons subject to military law may be guilty, shall be taken cognizance of by a general or special or summary court-martial, according to the nature and degree of the offense, and punished at the discretion of such court."

Appellant, a West Point graduate and a Captain in the United States Army, was at all times a Topographical and Intelligence Officer, having access to secret army maps showing the defenses of Bataan and other military installations in the Philippines. On the merits there is abundant evidence to support the findings of guilty on each of the following specifications of the charge:

"Sp. 1: Communicating secret maps pertaining to national defense to persons not entitled to receive such information.

"Sp. 2: Reproducing uncensored 'Secret' maps of military installations without authority.

"Sp. 3: Conspiring to communicate secret maps pertaining to national defense.

"Sp. 4: Conspiring to reproduce uncensored 'Secret' maps of military installations without authority."

The sentence was for 15 years imprisonment for the conviction on the four charges as a unit, there being no segregation of the number of years' sentence for each specification on which appellant was found guilty. The sentence was approved by the Commanding General of the Philippine Division; the record—not containing the maps —forwarded for the action of the President; examined by the Board of Review of the Judge Advocate General's Office in Washington, D. C.; the Board's opinion, with recommendations of the Judge Advocate General, and the record were given the President, who confirmed the sentence and ordered it carried into execution.

■ The final decision after trial by court-martial, like that of any civil court, is subject to inquiry in a habeas corpus proceeding concerning the jurisdiction of the court-martial to render the judgment. United States v. John Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636, 637.

Concerning the appellant's claims of violation of the Fourth and Sixth Amendments, the Government makes no contention that these Amendments confer no rights on an accused in a court-martial proceeding. Since we hold that the evidence does not show either absence of counsel or an unreasonable search and seizure, it is unnecessary to give consideration to this question of jurisdiction, otherwise necessarily required.

A. Appellant contends that certain secret maps of the United States Army containing information concerning the fortifications of Bataan and other places in the Philippine Islands were procured by one Major Evans, Chief of Intelligence, Philippine Department of the United States Army, by an unlawful search and seizure in violation of the provision of the Fourth Amendment, as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The maps were introduced into evidence without objection by appellant, but, when the facts regarding the search for them and their seizure were later proved, their rejection as evidence was sought. It was not granted.

Appellant does not contend that the maps were his property, but claims a right to their possession for the purpose of studying the defense of the Islands, a military function, for which he should be prepared. However, it is unnecessary to consider whether the words "their papers" in the Constitution included papers to which the possessor had not legal title, but has the right to possession, or whether the appellant had any right to possess them, because, in our opinion, there was no illegal search for and seizure of the maps.

It was stipulated that a search warrant addressed to "Any Officer of the Law," commanding a search "for the following property: 'Stolen Maps Belonging to United States Army' and, if you find the same or any part thereof, to bring it forthwith before me in the Justice of the Peace Court of Pasay, Rizal," was issued and executed by competent authority under the laws of the Philippine Commonwealth. Appellee does not contend that Major Evans was one of the Philippine officers of the law to whom the warrant was addressed.

■ It appears that Major Evans, in the performance of his duty with reference to the return of the maps to the United States Army, to which they belonged, gave the information which led to the issuance of the search warrant so stipulated to have been "issued and executed by competent authority." The search was made by a Captain of the Philippine Police of Constabulary and was accompanied by other police officers and by Major Evans, who could identify the maps belonging to the United States. It is entirely proper for the police, duly authorized to make a search, to take along persons for the identification of the property for which the warrant is issued. For instance, the owner of a watch advises the authorities that it has been stolen from him by John Brown and that the watch is in Brown's house, whereupon the authorities issue a search warrant and the complaining owner accompanies the

search to pick his watch out from another or others in John Brown's room. The Supreme Court has held that the searching authorities properly may procure such aid. Byars v. United States, 273 U.S. 28, 32, 47 S.Ct. 248, 71 L.Ed. 520.

The Police Captain testified that he was accompanied by Major Evans when they discovered the maps in a trunk in the automobile of the accused, located in the basement of the accused's home. Major Evans identified them as secret maps belonging to the United States Army, and it is not questioned that they belonged to anyone else other than the United States Army. The Police Captain, instead of returning the maps to the Justice of the Peace Court —where they would have been delivered to their owner, the United States Army,— permitted Major Evans, the agent of the Army to procure their recovery, to take possession of them while in the appellant's house.

■ Appellant contends that this taking of possession of the maps by Major Evans while in appellant's home constitutes an illegal search and seizure, and relies on the decision of the Supreme Court in Byars v. United States, supra. We do not agree. In that case a federal agent accompanied state officers whose warrant was to search for and seize intoxicating liquors possessed in violation of the state law. The federal officer searched for and seized certain Internal Revenue stamps claimed to be counterfeit. Because the warrant did not authorize the search for or the seizure of the stamps, and because they were usable only for the purpose of a federal prosecution for counterfeiting, the Supreme Court held that the acts of the federal officer were solely his and solely for the purpose of obtaining evidence for such a prosecution. The situation is entirely different from one where the agent of the owner of property alleged to be stolen, accompanies officers duly authorized to seek its recovery and, when it is recovered, takes possession of the property on behalf of its owner.

It is true that the testimony of Major Evans warrants the inference that he alone made the search, found the maps and took possession of them. However, the court-martial also had the testimony of the Police Captain that he and Major Evans made the search, found the maps in the trunk, which Major Evans identified as the secret maps of the United States Army for which the Police Captain was authorized to make the search. Whether or not the burden of proving the unlawfulness of the search and seizure rests upon the appellant, this court cannot say that the court-martial could not draw the inference that the Police Captain discovered and took possession of the maps in the performance of his official duty, imposed upon him by the Philippines warrant.

Since there was no violation of the Fourth Amendment, we are not required to consider whether a court having jurisdiction of the accused and of the subject matter of the alleged crime, has no jurisdiction to render a judgment of conviction based upon evidence procured by an illegal search and seizure. That is to say, whether the introduction in the course of a trial of evidence procured in violation of the Fourth Amendment has the same effect on the jurisdiction of the court martial as Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, holds concerning the absence of counsel in a trial in the civil court in violation of the Sixth Amendment.

B. Appellant contends that at the prosecution before the court-martial he was denied the right of counsel in violation of the Sixth Amendment. At the beginning of the trial, he was asked by the court what counsel he desired. He chose "to conduct his defense" two fellow officers, one as "Defense Counsel" and one as "Assistant Defense Counsel," the latter subsequently relieved at appellant's request and a civilian lawyer to act as "Associate Defense Counsel." We are directed to no evidence, and are unable to find any, that appellant's military Defense Counsel was not admitted to practice in some civil court, or that the civilian lawyer was a member of the bar of any American or Philippine civil court.

At the time of the introduction of the secret maps, the civilian associate was excluded to maintain their secrecy. Neither he nor appellant nor appellant's remaining Defense Counsel objected. But one witness was examined concerning the maps in the absence of the civilian counsel. Appellant was at all times there present with his Defense Counsel and cross-examined the witness.

■■ We hold that any Army officer, chosen, as here, by the accused, admitted by a court-martial to practice for him the arts of a military defense, need not also be admitted to practice by some civil court, in which military law may never have had

the slightest consideration, to be the "counsel" in a court-martial for which the Sixth Amendment makes provision. So far as concerns the Sixth Amendment, a court-martial counsel, chosen by the litigant and accepted by that body to prosecute or defend litigation there, is the same kind of officer at the bar of that court as is one entitled to practice at the bar of any other court. Cf. Dynes v. Hoover, 20 How. 65, 82, 15 L.Ed. 838.

■ The record of what happened while the defense was continued by the Defense Counsel shows no unprotected right of or prejudice against appellant, and he makes no claim of any specific prejudice resulting to him during such continuance. His associate counsel was present after the maps were introduced and the single witness examined. As seen, the motion to exclude the maps offered was later made and has received our consideration. We do not agree that Johnson v. Zerbst, 304 U.S. 548, 58 S.Ct. 1019, 82 L.Ed. 1461, gives to any officer tried by a court-martial of his brother officers and defended by a brother officer of his choice, a constitutional right to have also a civilian associate lawyer for the portion of the trial in which military secrets are revealed.

■ B-1. Though only by implication does appellant present the question of failure to pursue the trial with the counsel provided for by Article of War 17, and hence with an incomplete court and such a lack of jurisdiction as that established in Johnson v. Zerbst, supra, we think it fair to him to consider it. The pertinent part of Article of War 17 provides, "* * * The accused shall have the right to be represented in his defense before the court by counsel of his own selection, civil counsel if he so provides, *or* military if such counsel be reasonably available, otherwise by the defense counsel duly appointed for the court pursuant to article 11. Should the accused have counsel of his own selection, the defense counsel and assistant defense counsel, if any, of the court, shall, if the accused so desires, act as his associate counsel." (Emphasis supplied.)

Here the accused accepted as his Defense Counsel the military officer, that is, as his principal counsel. It will be noted that the provision of the Article is that he shall have "civil counsel if he so provides," followed by the disjunctive "or" and the words "military [counsel] if such counsel be reasonably available." The military

counsel having been so chosen by him and becoming his "defense counsel," Article of War 17 gives him no right to a civil associate counsel. Hence, assuming that Article 17 makes the presence of counsel as necessary to complete a court-martial as held for a civil court in Johnson v. Zerbst, this court-martial was completed by the counsel provided by Articles of War creating it.

■ C. Appellant also claims that he was denied counsel at the investigation into the matters upon which the charge against him was later made, and hence that he was denied the right of counsel of the provision in the Sixth Amendment. The pertinent portion of that Amendment reads, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." We do not regard the preliminary investigation as the "criminal prosecution" for which the Sixth Amendment provides. Hence a failure to give the right of counsel to the party whose conduct is under preliminary investigation, is not a denial of a constitutional right so affecting the jurisdiction of the later convened court-martial, and hence is not subject to our consideration in a habeas corpus proceeding.

■ The 70th Article of War does not give the right of counsel to the person under investigation. Hence no jurisdictional defect can be claimed under a contention that a court-martial is not a court of general jurisdiction (Cf. Dynes v. Hoover, 20 How. 65, 80, 15 L.Ed. 838), but is a special proceeding requiring that compliance with each step in its attaining its jurisdiction must be shown.

■ D. Appellant contends that he was entrapped into showing the maps to two civilians and in photographing them to be sold to some person desiring to secure them. The evidence is conflicting. Entrapment is a defense available under the plea of not guilty. There need be no plea in bar. Sorrels v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249. The failure, if any, of the trying body to make the proper inferences from the evidence is error to be considered on appeal. It does not go to the jurisdiction of the court and cannot be considered in habeas corpus.

■ E. Appellant claims that his conviction is void because when the record was forwarded to the Secretary of War

and the sentence was confirmed by the President, the maps were not included. This was error in violation of the Act of June 4, 1920, 41 Stat. 794, 797, Articles of War 35 and 50½, 10 U.S.C.A. §§ 1506, 1522. While it may not be a matter of our concern, appellant has shown no prejudice in this error. The record contained a sufficient description of the maps to show the commission of the offense. No constitutional provision was violated by the failure so to include the maps in the record, hence their absence raises no question of jurisdiction in the President to confirm the conviction and sentence. It is elementary that a habeas corpus proceeding may not review such error.

The judgment refusing to release appellant and dismissing his petition for the writ is affirmed.

Affirmed.