Mr. Justice James
delivered the opinion of tbe court:
These cases come here on appeal taken by tbe respondent, Colonel A. Gr. Gribson, from an order passed at chambers, discharging tbe petitioners, on their personal recognizances to appear before this court, from confinement at Washington Barracks. They bad been tried by a general court-martial and were held for execution of sentences of *67 imprisonment at hard labor in the penitentiary at Albany.
The charge in both cases was “violation of the 62d Article of War.” In Esmond’s case there were four specifications, but it is only important to recite the first, which was as follows: “In that private Frank A. Esmond, Battery E, 3d Artillery, a duly enlisted soldier of the United States, did, while a member of the post guard at Washington Barracks, D. C., take possession of a watch and chain, of the value of $150, the property of Captain J. B. Burbank, 3d Artillery, which he discovered lying upon, the seat of a closet in,the post guard house, and did secrete the same in a distant barrack building to prevent its recovery, and with the intention of appropriating it to his own use. This at Washington Barracks, D. C., on or about October 16, 1885.”
Before pleading formally to the charges and specifications, he interposed the following special plea:
“And the said defendant, etc., comes, etc., and says he is not guilty. And for answer to the charges presented against him, says that in the Supreme Court of the District of Columbia, holding a criminal term, the said Frank Esmond was indicted and lawfully charged with the stealing of one gold watch and chain, the property of one James B. Burbank, and of the value of [$115, all of the lawful, money of the United States; and that afterwards, to wit, on the 10th day of November, 1885, the said defendant was regularly and lawfully before the said court of full jurisdiction and that he was regularly tried and acquitted of the same and identical charge that is now preferred against him. And that the said defendant now says that he is the same and identical person who was tried and acquitted upon the same charge now preferred against him and none other, either in charge or person. And all of which he now verifies by transcript of the record now made part of this his said plea and filed herewith.”
The decision of the court-martial was “that the plea in bar of the prisoner was not sustained, and thereupon the prisoner pleaded “guilty” to the third specification, which alleged a false denial of knowledge of the taking, etc., *68 of the watch, and “not guilty” to the other specifications and the charge. He was found guilty on all the specifications and the charge, and the court pronounced the following sentence: “To be dishonorably discharged from the service of the United States, forfeiting all pay and allowances now due or to become due, and then to be confined at hard labor, at such place as the reviewing authority may direct, for one year.”
In McG-uirl’s case the first specification was as follows : “ In that private James McG-uirl, Battery E, 3d Artillery, a duly enlisted soldier of the United States, after having had a gold watch and chain secretly turned over to him by private Frank A. Esmond, Battery E, 3d Artillery, and knowing that said watch and chain were neither the property of said Esmond nor rightly in his possession, did, nevertheless, take the said watch and chain from the garrison to the city of Washington, and cause the same to be pawned for money, and appropriate the money to his own use. This at Washington Barracks,, D. 0., on or about October 16, 1885.” It is not material to recite here the second specification.
Counsel for the accused stated to the court-martial that an indictment for the offence now charged had been found and non-pros’d in the Supreme Court of the District of Columbia ; but no special plea was filed. The accused pleaded guilty to and was found guilty of the specifications and the charge; and thereupon the court pronounced a sentence similar in terms to that in Esmond’s case, except that the confinement was to be for six months.
In his order confirming and approving the proceedings, findings and sentence of the court-martial in Esmond’s case, Major-G-eneral Hancock, by whom the court was ordered and appointed, set forth, among other things, the following:
“In the foregoing case of private Frank A. Esmond, Battery E, 3d Artillery, counsel for the prisoner entertained a plea of autrefois acqmt.
“It appears that the accused was arrested October 22, *69 1885, by tbe civil authorities of the District of Columbia, for larceny; that he was indicted and duly brought to trial before the Supreme Court of the District, holding a criminal term, and that the jury found a verdict of not guilty; upon which Esmond was discharged. He was immediately arrested by the military authorities at Washington Barracks, charged with conduct to the prejudice of good order and military discipline — the basis of the specifications under the charge being the larceny for which he had been tried by the civil court.
“ The plea of the prisoner before the court was overruled. It results, therefore, that private Esmond has been twice tried for the same act, and that the question arises as to whether this is in violation of the constitutional principle that no person shall he twice put in jeopardy for the same offence.
“After an examination of law and precedent bearing on this point and others involved, the following conclusions have been reached:
“ 1. That a person may, by a single act, transgress the laws of two jurisdictions, as, for instance, those of the United States and those of a State, in which case the Supreme Court of the United States has said:
‘ That either or both may, if they see fit, punish such offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same of-fence, only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment of one in bar to a conviction by the other.’
“ 2. That a trial by civil court of an act which has military as well as civil relations, is not a bar to a subsequent trial by court-martial.
“3. That the case under consideration has military as well as civil relations. It is a legitimate conclusion, from the fact that courts-martial uniformly deal with this crime; that it is a military offence. Otherwise we must assume that these courts are uniformly usurping authority, since *70 it is their province to deal alone with' acts done in violation of the Articles of War. Civil courts punish civil offences ; military courts, military offences. Their jurisdiction is in no proper sense concurrent.
“An inspection of the general court-martial orders of the various headquarters establishes the fact that thefts by soldiers from soldiers or officers are uniformly tried by court-martial. It is to be observed that the British 81st Article of War expressly provides for the trial by court-martial of soldiers who ‘ shall steal any money or goods, the property of a comrade, of a military officer/ etc. This article has existed substantially in its present form since 1748.
“ It appears, therefore that the court did not err in overruling the plea in this case.
“ The fact of a former acquittal was strong presumptive evidence of the innocence of the accused. The court-martial has, however, adjudged him guilty of the act set forth in the specifications; and after careful review of the evidence, no reason is seen for disapproving the findings. The prisoner’s guilt seems to have been proven beyond a reasonable doubt.
“The proceedings, findings and sentenceare approved. The sentence is confirmed and will be duly executed. Subject to the approval of the Secretary of War, the penitentiary at Albany, N. Y., is designated as the place for the execution of so much of the sentence as relates to confinement at hard labor. He will be held at Washington Barracks until further orders are given in regard to his disposition.”
We have recited thus fully the order of approval of the reviewing officer, as well as the proceedings of the court-martial for the following reason: Article 104 provides that “ no sentence of a court-martial shall be carried into execution until the whole proceedings shall have been approved by the officer ordering the court, or by the officer commanding for the time being.” The effect and conclusiveness of any action of the court stands, therefore, as much upon the reviewing officer’s approval and order as upon the original *71 proceedings and sentence of the court. The two constitute an entire proceeding, and are to be considered together.
As it is one of the functions of the reviewing authority to ascertain, before he can approve, what matters of fact and of law have been considered and decided by the court-martial, it follows that when he sets forth, in his judgment or order of approval, what these have been, his order and its recitals are, equally with the record of the proceedings of the court, evidence of what matters of fact and of law were adjudicated by the whole proceeding and sentence. The importance of this point will presently appear. We proceed to apply this principle.
It has been observed that the record of the court-martial states that the court decided that the plea of autrefois acquit was “not sustained.”
This phrase, taken alone, might import that the plea was not sustained by proof as to the identity of the act charged in the criminal and military trials, but as it was submitted and considered without proof, we understand the court to have decided its effect as if upon demurrer, and therefore to have assumed that the act was identical, and to have decided, as a matter of mixed fact and law, that this act, by reason of its operation to prejudice good order and military-discipline, was a different offence from that of which the accused had been acquitted.
If, however, this part of the record should be supposed to leave that point in doubt, we think that doubt is removed by the order of the reviewing and confirming authority. By this it is established that these were the matters of fact and law decided by the court-martial.
When the whole record, including the trial and sentence and the approval which gave them final effect, is considered together, it is shown conclusively that it was decided by the military tribunal that the former acquittal and the trial by court-martial related to the same act, but not to the “same offence.” This presents sharply the questions which are to be considered by us.
- The first question relates to the jurisdiction of the court- *72 martial and of the reviewing authority, both as to trial, and punishment.
The 62d Article of War provides that “crimes not capital and all disorders and neglects, which officers and soldiers may be guilty of, to the prejudice of good order and military discipline, though not mentioned in the foregoing Articles of War, are to be taken cognizance of by a general or a , regimental, garrison, or field officer's court-martial, according to the nature and degree of the offence, and punished at the discretion of the court.”
Jurisdiction as to punishment is further regulated by Article 97, which provides that “no person in the military service shall, under the sentence of a court-martial, be punished by confinement in a penitentiary, unless the offence of which he may be convicted would, by some statute of the United States, or by some statute of the State, territory or district in which such offence may be committed, or by the common law, as the same exists in such State, territory or district, subject such convict to such punishment.”
It is obvious that Congress intended, by the 62d Article, to give to courts-martial jurisdiction of specific crimes, such as larceny, when committed by persons in the military service, and the jurisdiction so given, is to be exercised when and because such crime is committed to the prejudice of good order and military discipline.
As to their jurisdiction in the matter of punishment, it is clear that, by the grant, in Article 62, of power to punish such erimes at the discretion of the court, coupled with the limitation contained in Article 97, Congress intended to give to courts-martial jurisdiction to punish larceny, for example, when committed by persons in the military service, to the prejudice of good order and military discipline, by imprisonment in a pénitentiary, whenever such crime is so committed in a place where the civil courts have, by some statute, jurisdiction to punish the crime of larceny by such imprisonment. By construction it appears also that Congress intended that these courts should determine, first, the specific nature of the crime proven; and, second, that it was *73 committed to the prejudice of good order and military discipline.
On the other hand, it was not contemplated that these determinations should appear in the technical forms of criminal proceedings which are founded in indictments. For the purposes of these two Articles of War, it was intended to be sufficient that it should appear substantially that an officer or soldier, who was sentenced to imprisonment in a penitentiary, was tried for and found guilty of an act which amounted, for example, to larceny, and this to the prejudice of good order and military discipline.
In order to ascertain the effect of such a statute in regard to the question which we have finally to consider, we must recur to the constitutional powers of Congress touching the punishment of crimes committed by persons in the military service.
Section 8 of the first article of the Constitution provides that “ the Congress shall have power * * * to make rules for the government and regulation of the land and naval forces.’'
The Fifth Amendment provides that “ no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury; except in cases arising in the land and naval forces, or in the militia when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put iu jeopardy of life or limb.” And the Sixth Amendment provides that “in all criminal prosecutions the accused shall enjoy the right to a speedy public trial by an impartial jury of the State and district wherein the crime shall have been committed.”
These provisions contemplate the establishment by Congress of two distinct systems of jurisdiction for the punishment of crime, and that each should be complete and sufficient. In other words, they import that the power of Congress “to make rules for the government of the land and naval forces ” includes power to establish institutions for the trial and punishment of crimes committed by per *74 sons in the land and .naval forces, whose, action and judgments shall he as conclusive for all purposes as the action and judgments of any other tribunals can be.
If such tribunals have actually been established, their judgments must be treated precisely as the judgments of the courts of the other system of jurisdiction are treated.
In the light of its constitutional authority to do so, it is clear to us that Congress has intended by the Articles of War to establish such a system. In addition to courts for trial, it has provided a separate and complete line of reviewing authorities, terminating in the same executive, who is authorized to pardon officers tried in the other courts of the United States.
It is clear, on principle, that these tribunals have power to adjudicate conclusively whatsoever they have power to adjudicate at all.
This general principle, applicable to all courts of final jurisdiction, has been applied by the Supreme Court of the United States to the judgments of courts-martial.
In Dynes vs. Hoover, 20 How., 81, that court said: “Whatever the sentence is or may have been, as it was not a trial by court-martial, taking place out of the United States, it could not have been carried into execution but by the confirmation of the President, had it extended to loss of life, or in cases not extending to loss of life, as this did not, but by the confirmation of the Secretary of the Navy, who ordered the court. And if a sentence be so confirmed, it becomes final, and must be executed unless the President pardons the offender. It is in the nature of an appeal to the officer ordering the court, who is made by the law the arbiter of the legality and propriety of the court’s sentence. When confirmed, it is altogether beyond the jurisdiction or inquiry of any civil tribunal whatever, unless it shall he in a case in which the court had not jurisdiction over the subject matter or charge, or in which, having jurisdiction over the subject matter, it has failed to observe the rules prescribed by the statute for its exercise.”
Dynes vs. Hoover was an action for assault and battery *75 and false imprisonment, brought by a person in the naval service who had been imprisoned in the penitentiary of the District of Columbia under a statute of a naval court-martial. The same general principle has been considered, however, by the Supreme Court in cases arising like this upon writs of habeas corpus; for example, in Ex parte Parks, 93 U. S., 18; Ex parte Siebold, 100 U. S., 371; and Ex parte Bigelow, 113 U. S., 328.
The opinion of the court in the case last named is of especial importance in relation to the particular question presented by the case before us. That was an application for a writ of habeas corpus to release the petitioner from imprisonment in the jail of the District of Columbia, where he was for execution of a judgment of this court sentencing him to imprisonment in the penitentiary. The prisoner had pleaded that he was twice put in jeopardy, etc., contrary to the Fifth Amendment of the Constitution, and it was claimed, at the hearing on application for the writ of habeas corpus, that this court, in proceeding to try and convict him, had exceeded its jurisdiction.
Mr. Justice Miller, speaking for the court, said:
“That court had jurisdiction of the offence described in the indictment on which the prisoner was tried. It had jurisdiction of the prisoner, who was properly brought before the court. It had jurisdiction to hear the charge and the evidence against the prisoner. It had jurisdiction to hear and to decide upon the defences offered by him. The matter now presented was one of those defences. Whether it was a sufficient defence was a matter of law on which that court must pass, so far as it was purely a question of law, and on which the jury, under the instructions of the court, must pass, if we can suppose any of the facts were such as required submission to the jury.
“If the question had been one of former acquittal — a much stronger case than this — the court would have had jurisdiction to decide upon the record whether there had been a former acquittal for the same offence; and if the identity of the offence were in dispute, it might be neces *76 sary on such a plea to submit that question to the jury on the issue raised by the plea.
“ The same principle would apply to a plea of former conviction. Clearly, in these cases, the court not only has jurisdiction to try and decide the question raised, but it is its imperative duty to do so. If the court makes a mistake on such trial, it is error which may be corrected by the usual modes of correcting such errors, but that the court had jurisdiction to decide upon the matter raised by the plea, both as a matter of law and of fact, cannot be doubted.
“ This Article 5 of the Amendments, and Articles 6 and ® 7, contain other provisions concerning trials in the courts of the United States, designed as safeguards to the rights of parties. Do all of these goto the jurisdiction of the courts ? And are all judgments void where they have been disregarded in the progress of the trial ? Is a judgment of conviction void when a deposition has been read against a person on trial for crime because he was not confronted with the witness, or because the indictment did not inform him with sufficient clearness of the nature and cause of the accusation?
“It may be confessed that it is not always very easy to determine what matters go to the jurisdiction of a court so as to make its action, where erroneous, a nullity. But the general rule is, that when the court has jurisdiction by law of the offence charged, and of the party who is so charged, its judgments are not nullities.”
We have the authority of the Supreme Court, in Dynes vs. Hoover, that these principles are equally applicable to the proceedings and judgment of a court-martial in a case where the court had jurisdiction of the offence and of the person accused. In the case before us, it is clear that the court-martial had jurisdiction of the kind of crime for which the petitioner was tried, and of the person of the prisoner. Having these, it had, in the language of Bigelow’s Case, “jurisdiction to hear and decide upon the defences offered by him,” and “ the matter now presented was one of these defences.”
*77 It should he added, that in the matter of punishment— and this also comes within the principle laid down in that case — the court-martial had jurisdiction to adjudge this punishment for the kind of case which it wa's trying. Whether it committed errors in its proceedings is immaterial in this inquiry, inasmuch as this court has no jurisdiction to review and correct such errors, either directly or hy indirection, through the writ of habeas corpus. The only question which we can consider is, whether the judgment and sentence pronounced hy the court and the reviewing authority was a nullity. And this brings us to the question whether the court proceeded without jurisdiction after its decision upon the plea of autrefois acquit.
It may be objected that, hy its decision on this plea, the court virtually determined that the act which was the basis of the charge tried by the criminal court, and the act which was the basis of the charge before the court-martial, were identical; that this act constituted in both cases the offence of larceny; that thereby the court-martial decided in effect and conclusively that it was trying the accused for the identical offence of which he had been lawfully acquitted, and that the effect of this determination of law and fact was that its own jurisdiction to try and punish him for larceny thereupon ceased.
The answer to this proposition is that such a statement of the decision and determination of the court-martial is inexact; and that its actual decision was that larceny committed “ against the peace and Government of the United States of America,” and larceny committed “ to the prejudice of good order and military discipline,” were not, in a legal sense, and therefore were not within the meaning of the prohibitory clause of the Fifth Amendment, “ the same offence.”
If this was a question of law, it was not only one which the court-martial had jurisdiction to decide, hut one which, in the language of the Supreme Court, it was its imperative duty to decide. To hold that no such question of law remained to he decided, after it had decided that the act *78 was the same, and that this act was in both cases larceny, would be merely to decide here that the matter before the court-martial was too plain to be a question, and that that court could not make it one.
Such a conclusion would involve the very process which we denied to be permissible; the process, namely, of considering the point in order to decide that it was not to be considered.
In this inquiry, which turns simply upon the jurisdiction of the court-martial and the validity or nullity of its sentence, it is not for us to decide the question whether larceny considered as an offence against the internal peace and government of a community, and larceny considered as an of-fence which imposes military discipline, and may thereby jeopardize the external safety of a community, and may even imperil its independent existence as a community, are in legal contemplation different offences. It is enough for us that whether they are the same offence is a question to be decided on a plea of former acquittal; and that this question was actually decided by a court which was competent to entertain it. If its decision was erroneous — and upon that point we intimate no opinion — we have no power to review that error. We are bound to treat as valid, for the purposes of this inquiry, any decision which that court was competent to make.
We observe that the very pointed inquiry of Mr. Justice Miller, in Bigelow’s Case, seems to raise the question whether any of the prohibitions contained in the Amendments can be regarded as tests of jurisdiction. Whether it was intended to intimate that, even where it should appear that a person had been twice tried for the same offence, that fact would not render the conviction or sentence in the second trial a nullity, it is not material now to consider.
In the case before us, the court decided that the prisoner was not tried for the same offence of which he had been acquitted. It follows that we must hold that he was then for the first time tried for the offence of which that court had jurisdiction under the 62d Article of War. If *79 this be so, the court had jurisdiction to sentence the petitioner to imprisonment in a penitentiary at hard labor.
As between the two judicial systems which the Constitution and the statutes have intended to be equally complete and sufficient, we do not find that any question of the supremacy of the civil authority can arise. However strongly we might be of opinion that we would have decided differently upon such a defence, and on that matter we intimate no opinion, we have only to remember that the same 'authority which has provided methods for the correction of the errors of the civil courts has provided what it considered to be perfect and sufficient methods for the correction of errors committed by the military tribunals, and that we are not authorized to have a judicial opinion on that subject.
The order discharging the petitioners is reversed.