**BURNS v. LOVETT, Secretary of Defense, et al.**

**DENNIS v. LOVETT, Secretary of Defense, et al.**

Nos. 11419, 11420.

United States Court of Appeals District of Columbia Circuit.

Argued June 18, 1952.

Decided July 31, 1952.

Writ of Certiorari Granted Dec. 15, 1952. See 73 S.Ct. 284.

1. Majority opinion, 91 U.S.App.D.C. 202, 202 F.2d 334.

Robert L. Carter, New York City, *pro hac vice*, by special leave of Court, and Frank D. Reeves, for appellants.

Lieutenant Colonel Walter Kiechel, Jr., Office of the Judge Advocate General, United States Air Force, and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., with whom Charles M. Irelan, U. S. Atty., and B. M. Landesman, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellees.

Before PRETTYMAN, PROCTOR and BAZELON, Circuit Judges.

PRETTYMAN, Circuit Judge.

These are appeals from denials by the District Court of petitions for writs of *habeas corpus*. Appellants were members of American armed forces on the Island of Guam. They were convicted by courts-martial of murder and rape and were sentenced to death. The convictions and sentences having been approved by the reviewing authorities, including the President, they filed petitions for *habeas corpus*. The records of the trials by the courts-martial were filed by petitioners at the same time with the court. Attached to the petitions were several affidavits and extracts from the penal code of Guam. The court issued rules to show cause, and the respondent officials filed motions to dismiss the petitions and to discharge the rules, attaching to those motions copies of the findings and opinions of the several reviewing authorities. The court held that the petitions did not recite facts upon which the relief sought could be granted and therefore discharged the rules and dismissed the petitions. In this court the

cases were consolidated for hearing and decision. Appellants are presently confined in the custody of Headquarters of the Japan Logistical Command.

A civilian girl Government employee at a store on the Island of Guam was brutally raped and murdered. In the course of the ensuing investigation lie detector tests were given, upon their consent, to many members of the American armed forces in the vicinity. What transpired at these tests is not reported in the papers before us, but immediately thereafter certain physical evidence was uncovered and three soldiers, these appellants and one Calvin Dennis, were taken into custody and delivered to the civil authorities of Guam, who were American naval officers and men. They were detained in this custody from January 7, 1949, to January 30, 1949, when they were delivered to the military authorities. They were tried separately, the trials of appellants being May 9–16 and May 26–30. Several alleged confessions of Herman Dennis were presented at his trial. Calvin Dennis was the principal witness for the prosecution at the trial of Burns. Other testimony and physical evidence of various sorts were presented. The convictions were reviewed by the Board of Review in the Office of the Judge Advocate General, United States Air Force, and by the Judicial Council, both of which rendered long, written opinions. The records and extensive correspondence relating to the cases were reviewed by the Judge Advo-cate General, United States Air Force, and he wrote memoranda of his conclusions to the Secretary of the Air Force. Thereafter the President confirmed the sentences. The executions were stayed pending these proceedings.

The controversy presents a problem of jurisdiction. The question is whether the allegations of the petitions, viewed in the light of the accompanying data and of the returns to the rules,[1] are sufficient to invoke the jurisdiction of the court and to require a hearing on the merits.

■■■ Our first inquiry concerns the authority of courts to review courts-martial. The Constitution, in Article I, Section 8, Clause 14, confers upon the Congress power "To make Rules for the Government and Regulation of the land and naval Forces". Congress has done so. Those rules relating to trials for offenses were the Articles of War,[2] now superseded by the Uniform Code of Military Justice.[3] They provide for trial procedure and review procedure.[4] This power of the Congress and the judicial power, both established by the Constitution, are separate powers.[5] Based upon the constitutional power of the Congress over the armed forces, the courts have held uniformly, from the earliest time down to a decision as late as 1950, that the power of courts is limited to a consideration of the "jurisdiction" of courts-martial, and they have no power of review.[6] In the Yamashita

1. Walker v. Johnston, 1941, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830; In re Yamashita, 1946, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499; Palmer v. Ashe, 1951, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154; Dorsey v. Gill, 1945, 80 U.S.App.D.C. 9, 148 F.2d 857, certiorari denied, 1945, 325 U.S. 890, 65 S.Ct. 1580, 89 L.Ed. 2003. See Reviser's Note to 28 U.S.C.A. § 2243; United States v. Hayman, 1952, 342 U.S. 205, 222–223, 72 S.Ct. 263, 96 L.Ed. 232.

2. 41 Stat. 787 (1920), 10 U.S.C.A. § 1471 et seq.

3. 64 Stat. 108 (1950), 50 U.S.C.A. § 551 et seq.

4. 41 Stat. 797 (1920), 10 U.S.C.A. § 1522; 64 Stat. 128 (1950), 50 U.S.C.A. § 653.

5. Dynes v. Hoover, 1858, 20 How. 65, 61 U.S. 65, 15 L.Ed. 838; Carter v. Woodring, 1937, 67 App.D.C. 393, 92 F.2d 544, certiorari denied, 1937, 302 U.S. 752, 58 S.Ct. 283, 82 L.Ed. 582; United States ex rel. Wessels v. McDonald, D.C.E.D.N.Y., 265 F. 754, appeal dismissed, 1921, 256 U.S. 705, 41 S.Ct. 535, 65 L.Ed. 1180; Ex parte Potens, D.C.E.D.Wis.1945, 63 F.Supp. 582.

6. Whelchel v. McDonald, 1950, 340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141; Hiatt v. Brown, 1950, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691; Dynes v. Hoover, 1858, 20 How. 65, 61 U.S. 65, 15 L.Ed. 838; Johnson v. Sayre, 1895, 158 U.S. 109, 15 S.Ct. 773, 39 L.Ed. 914; Mullan v. United States, 1909, 212 U.S. 516, 29 S.Ct. 330, 53 L.Ed. 632; United States v. Grimley,

case [7] the Supreme Court said:

"If the military tribunals have lawful authority to hear, decide and condemn, their action is not subject to judicial review merely because they have made a wrong decision on disputed facts. Correction of their errors of decision is not for the courts but for the military authorities which are alone authorized to review their decisions."

And in Hiatt v. Brown [8] the Court said:

"It is well settled that 'by *habeas corpus* the civil courts exercise no supervisory or correcting power over the proceedings of a court-martial * * * The single inquiry, the test, is jurisdiction.' In re Grimley, 137 U.S. 147, 150 [11 S.Ct. 54, 34 L.Ed. 636] (1890). In this case the court-martial had jurisdiction of the person accused and the offense charged, and acted within its lawful powers. The correction of any errors it may have committed is for the military authorities which are alone authorized to review its decision."

Appellants say that recent decisions of the Supreme Court have expanded the concept of "jurisdiction" for purposes of determining the right to *habeas corpus*. That is correct. In Whelchel v. McDonald [9] the Court clearly intimated, if it did not expressly say, that a denial to an accused of an opportunity to tender an issue of insanity would go to the question of the jurisdiction of a court-martial. *Habeas corpus* has been held to lie in criminal cases in the courts where there has been a denial of counsel,[10] a coerced plea of guilty,[11] a deliberate suppression of favorable evidence,[12] mob hysteria,[13] double jeopardy.[14] We recently reviewed the problem in Smith v. United States.[15]

The Supreme Court seemed, in Hiatt v. Brown, supra, to revert to earlier concepts of jurisdiction in considering the power of courts over courts-martial. It cited In re Grimley. At the same time it used the expression "acted within its lawful powers." That expression seems to imply a scope of review broader than a technical "jurisdiction".

In its brief the Government contented itself with support of its ultimate conclusion, without attempting to establish premises, but in oral argument its counsel took the position that persons in the armed forces are not protected by the due process clause. For that position he relied upon Johnson v. Eisentrager.[16] It is true that in the opinion in that case the Supreme Court said, "American citizens conscripted into the military service are thereby stripped of their Fifth Amendment rights * * *."[17] There are also several expressions in Ex

1890, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636; McClaughry v. Deming, 1902, 186 U.S. 49, 69, 22 S.Ct. 786, 46 L.Ed. 1049, 1057–1058; Ex parte Reed, 1879, 100 U.S. 13, 23, 25 L.Ed. 538, 539; Carter v. McClaughry, 1902, 183 U.S. 365, 392–401, 22 S.Ct. 181, 46 L.Ed. 236, 250–253; Swaim v. United States, 1897, 165 U.S. 553, 17 S.Ct. 448, 41 L.Ed. 823; Note, 20 L.R.A.,N.S., 413. See also Ex parte Milligan, 1866, 4 Wall. 2, 71 U.S. 2, 18 L. Ed. 281.

7. In re Yamashita, 1946, 327 U.S. 1, 8, 66 S.Ct. 340, 90 L.Ed. 499.

8. 1950, 339 U.S. 103, 111, 70 S.Ct. 495, 94 L.Ed. 691.

9. 1950, 340 U.S. 122, 71 S.Ct. 146, 95 L. Ed. 141.

10. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

11. Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Von Moltke v. Gillies, 1948, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.

12. Pyle v. Kansas, 1942, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214.

13. Moore v. Dempsey, 1923, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543.

14. Ex parte Nielsen, 1889, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118.

15. 1950, 88 U.S.App.D.C. 80, 187 F.2d 192, certiorari denied, 1951, 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358. See also Note, The Freedom Writ—The Expanding Use of Federal Habeas Corpus, 61 Harv.L.Rev. 657 (1948).

16. 1950, 339 U.S. 763, 70 S.Ct. 936, 94 L. Ed. 1255.

17. Id., 339 U.S. at page 783, 70 S.Ct. at page.

parte Quirin [18] which seem to imply that the exception of "cases arising in the land or naval forces" applies to the whole of both the Fifth and the Sixth Amendments. There is also the sweeping statement, "We conclude that the Fifth and Sixth Amendments did not restrict whatever authority was conferred by the Constitution to try offenses against the law of war by military commission * . * *." [19] In the opinion of Chief Justice Chase in Ex parte Milligan [20] is the statement, "We think, therefore, that the power of Congress in the government of the land and naval forces and of the militia, is not at all affected by the fifth or any other amendment." Again there is a sweeping statement by the Court of Appeals for the Second Circuit that "The Fifth and Sixth Amendments are, of course, inapplicable to a court-martial. Ex parte Quirin et al., supra." [21]

But we think those expressions must be read in context. The Eisentrager case concerned enemy aliens. In the expression quoted, the Court cited Wade v. Hunter,[22] which concerned double jeopardy, itself a Fifth Amendment protection, in court-martial proceedings. In that case (Wade v. Hunter) the Court recited the rule of the Perez case,[23] applicable to federal courts upon the discontinuing of criminal trials once begun, and then said:

> "We see no reason why the same broad test should not be applied in deciding whether court-martial action runs counter to the Fifth Amendment's provision against double jeopardy. Measured by the Perez rule to which we adhere, petitioner's second court-martial trial was not the kind of double jeopardy within the intent of the Fifth Amendment." [24]

In the Quirin case, supra, the Court was discussing the right of trial by jury and indictment by grand jury. The indictment clause of the Fifth Amendment contains a specific exception of "cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger". And, as to trial by jury, the Court held, in an extended discussion, that the Sixth Amendment protection of this right does not extend to cases not subject to such trials at the common law. It seems to us that the language and thought in Quirin was directed to whether the rights there involved (indictment and trial by jury) were discretionary under the power conferred upon the Congress by Article I or were within the requirements of the Fifth and Sixth Amendments. We do not read the case as holding that all the rights covered by the Amendments, including the right of due process of law, were abrogated by the clause empowering Congress to make rules for the armed forces.

In Ex parte Milligan, supra, the Court was dealing with a civilian, and the quoted observation of the Chief Justice was directly related to the meaning of the expressed exception in the Fifth Amendment. The language quoted from Innes v. Crystal [25] was used in a footnote to a case which dealt with errors not going to the jurisdiction of the court-martial. We do not read it as intended to be a blanket denial of all Fifth and Sixth Amendment rights. When the Supreme Court declared the case moot and the petition was presented to the Third Circuit, that court unequivocally declared petitioner's right to due process.[26]

Upon elementary reasoning, upon the language and structure of the Constitution, and upon authority, we think men accused

18. 1942, 317 U.S. 1, 63 S.Ct. 1, 87 L.Ed. 3.

19. Id., 317 U.S. at page 45, 63 S.Ct. at page 19.

20. 1866, 4 Wall. 2, 138, 71 U.S. 2, 138, 18 L.Ed. 281, 301.

21. Innes v. Crystal, 2 Cir., 1943, 131 F. 2d 576, 577, note 2, certiorari denied as moot, 1943, 319 U.S. 755, 63 S.Ct. 1164, 87 L.Ed. 1708.

22. 1949, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974.

23. United States v. Perez, 1824, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165.

24. Supra note 22, 336 U.S. at page 690, 69 S.Ct. at page 838.

25. Supra note 21.

26. United States ex rel. Innes v. Hiatt, 3 Cir., 1944, 141 F.2d 664.

before courts-martial are entitled to due process of law. It is an elementary precept in our concept of law and government that a human being has an inherent right to due process of law. The power of the Congress to make rules for the armed forces is one of a long list (eighteen, to be exact) of powers conferred in Section 8 of Article I upon the Congress. We find no intimation in the Constitution itself that Clause 14 of Section 8 of Article I and proceedings pursuant thereto are exempt from the requirements and prohibitions of the Fifth and Sixth Amendments. We think those Amendments apply to each and all of the powers of the Congress, to the 14th Clause of Section 8 as well as to the other seventeen clauses, and to all acts of executive officials under Article II and to judicial proceedings under the power conferred by Article III, except when an exception is stated in the Constitution itself. Moreover, the text of the Fifth Amendment supports this view. It reads:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation."

It seems to us to be clear upon the face of the text that the specific exception of cases arising in the land or naval forces from the first clause, relating to indictment before prosecution, conclusively shows that the exception does not apply to the other clauses. As we have already pointed out, the Supreme Court has definitely indicated that the double jeopardy clause applies to courts-martial.

There is a wealth of authority to support the view that due process applies to courts-martial. The Supreme Court so indicated in Hiatt v. Brown when it said:

"We think the court was in error in extending its review, *for the purpose of determining compliance with the due process clause,* to such matters as the propositions of law set forth in the staff judge advocate's report * * *." [27] (Emphasis supplied.)

We cite a few other cases in the footnote,[28] all clearly based upon the view that due process of law is a right of persons accused before courts-martial.

Of course, due process of law is not a fixed formula of unchanging and unchangeable elements. Due process of law in the armed forces has always been in some respects different from due process under civil authority. "To those in the military or naval service of the United States the military law is due process." [29] But the essentials of a fair proceeding are requisites under all conditions. The cases cited in note 28, supra, so show. Those essentials are fairly well identified and established in the cases.

We proceed, then, upon the premise that the protections of the Fifth

27. Supra, 339 U.S. at page 110, 70 S.Ct. at page 498.

28. Shapiro v. United States, 1947, 69 F. Supp. 205, 107 Ct.Cl. 650; Schita v. King, 8 Cir., 1943, 133 F.2d 283, certiorari denied, 1944, 322 U.S. 761, 64 S. Ct. 1273, 88 L.Ed. 1589; United States ex rel. Innes v. Hiatt, supra note 26; United States v. Swenson, 2 Cir., 1948, 165 F.2d 756; Benjamin v. Hunter, 10 Cir., 1948, 169 F.2d 512; Henry v. Hodges, 2 Cir., 1948, 171 F.2d 401, certiorari denied, 1949, 336 U.S. 968, 69 S.Ct. 937, 93 L.Ed. 1119; Becker v. Webster, 2 Cir., 1949, 171 F.2d 762, certiorari denied, 1949, 336 U.S. 968, 69 S.Ct. 938, 93 L.Ed. 1120; Montalvo v. Hiatt, 5 Cir., 1949, 174 F.2d 645, certiorari denied, 1949, 338 U.S. 874, 70 S.Ct. 135, 94 L.Ed. 536.

29. Reaves v. Ainsworth, 1911, 219 U.S. 296, 304, 31 S.Ct. 230, 55 L.Ed. 225, 228. See also United States ex rel. French v. Weeks, 1922, 259 U.S. 326, 335, 42 S.Ct. 505, 66 L.Ed. 965; United States ex rel. Innes v. Hiatt, supra note 26, 141 F.2d at page 666.

and Sixth Amendments apply to courts-martial, except for the specific exception in the Fifth and the historic meanings at common law of the terms used in both Amendments. But this premise does not solve our present problem. The mere presence of constitutional questions, the assertion of constitutional rights, does not always give rise to a right of *habeas corpus*. This writ is an extraordinary remedy. As a usual rule it cannot be used as a substitute for an appeal or as a means for securing review of questions determined by the authorities duly empowered by Constitution and statute to determine them. This matter was exhaustively examined in respect to federal court proceedings by the Supreme Court in Sunal v. Large,[30] and it was there laid down as the governing rule that only in exceptional circumstances will *habeas corpus* be granted where appellate procedure is available for correction of the error. A detailed study of prior cases is included in the dissent of Mr. Justice Frankfurter. The Court "put to one side" in that case the problem of *habeas corpus* in proceedings begun in state courts and referred that question to several cases, of which the latest was Ex parte Hawk.[31] There it was held (1) that a person must exhaust his state remedies and (2) that a federal court will not ordinarily reexamine upon writ of *habeas corpus* questions adjudicated by state courts, but will do so where resort to those courts fails to afford a full and fair adjudication of the federal contentions raised.[32]

■■■■■ The problem before us involves neither a federal court nor a state court. It involves a trial and appellate process, including process for new trial,[33] established by the federal Congress under a specific grant of power by the Constitution. It seems to us that in such a proceeding, under the general doctrines we have described, *habeas corpus* will not lie to review questions raised and determined, or raisable and determinable, in the established military process, unless there has been such gross violation of constitutional rights as to deny the substance of a fair trial and, because of some exceptional circumstance, the petitioner has not been able to obtain adequate protection of that right in the military processes. The rule as we have phrased it includes three propositions. (1) An accused before a court-martial is entitled to a fair trial within due process of law concepts. (2) The responsibility for insuring such fairness and for determining debatable points is upon the military authorities, and their determinations are not reviewable by the courts, except (3) that, in the exceptional case when a denial of a constitutional right is so flagrant as to affect the "jurisdiction" (*i.e.*, the basic power) of the tribunal to render judgment, the courts will review upon petition for *habeas corpus*. To support issuance of a writ of *habeas corpus* the circumstances shown by the papers before the court must so seriously affect the fundamental fairness of the trial and the validity of the appellate and later determinations as to deprive the military authorities of jurisdiction, *i.e.*, of power to act.

We have discussed the applicability of the Constitution, but we note that the Articles of War, as enacted by the Congress and effective at the time of these trials, required the appointment of defense counsel,[34] provided for other counsel of accused's selection, if "reasonably available",[35] prohibited

30. 1947, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982.

31. 1944, 321 U.S. 114, 116–117, 64 S.Ct. 448, 88 L.Ed. 572.

32. See Frank v. Mangum, 1915, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; Moore v. Dempsey, 1923, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L. Ed. 791; Jennings v. Illinois, 1951, 342 U.S. 104, 72 S.Ct. 123, 96 L.Ed. 119; Dorsey v. Gill, 1945, 80 U.S.App.D.C. 9, 23–25, 148 F.2d 857, 871–873, certiorari denied, 1945, 325 U.S. 890, 65 S.Ct. 1580, 89 L.Ed. 2003; Sanderlin v. Smyth, 4 Cir., 1943, 138 F.2d 729; Morton v. Henderson, 5 Cir., 1941, 123 F.2d 48.

33. 64 Stat. 147 (1950), 50 U.S.C.A. § 740.

34. 41 Stat. 789 (1920), 10 U.S.C.A. § 1482 (1927).

35. 41 Stat. 790 (1920), 10 U.S.C.A. § 1488 (1927).

compulsory self-incrimination,[36] and provided that the accused should have copies of the record of trial.[37]

This brings us to consideration of the records in the cases before us.

We note, as a preliminary, that no allegation is made in these petitions as to the appointments of the courts-martial or of their jurisdiction over the accused or the alleged offenses.

 By way of further preliminary we note that the two courts-martial in these cases were composed of different officers. The record in one case recites that these officers were detailed from areas far from Guam, and the orders in the other case indicate the same thing. The convictions were reviewed by different Boards of Review. They were then reviewed by the Judicial Council. Motions for new trials were made pursuant to Section 740 of Title 50 of the United States Code,[38] which provides that "The Judge Advocate General * * * is authorized * * * upon good cause shown, in his discretion to grant a new trial". The Judge Advocate General, after a special investigation ordered by him, denied the motions. Thus it appears that all the steps provided by Congress have been taken, and no irregularity in those respects is alleged.

We look first at the Dennis petition and the papers relating to it. In essence it contains the following allegations:

1. Dennis was held without arraignment by the civil authorities of Guam from January 7, to January 17, 1949. During this period he was held incommunicado in solitary confinement, subjected to continuous questioning, beaten, and denied sleep and food. Four confessions were obtained from him as a result of duress, protracted interrogation, use of a lie detector, threats, promises, and trickery, and certain hairs were taken from his person, and these were introduced in evidence against him. He was not advised of his right against self-incrimination, in violation of the Fifth Amendment and of the 24th Article of War,[39] or warned that his statements would be used against him.

2. He was denied opportunity to consult with counsel during the entire period of his detention by the Guam authorities, from January 7th to on or about January 29th when he was returned to Air Force authorities. He was denied counsel of his choice; counsel was not appointed for him until April 8th; and he did not have opportunity to receive advice of counsel until "shortly before" his trial began on May 9, 1949. Defense counsel was not given, or did not take, adequate time to prepare and present his case.

3. Important evidence tending to prove his innocence was suppressed; efforts were made by the investigating and prosecuting authorities to procure perjured testimony against him; irrelevant, immaterial, prejudicial and inflammatory evidence was received against him; and evidence was taken from him, "planted", and presented at the trial. In the light of defense testimony placing him elsewhere at the time of the crime, of his repudiation of his coerced confession, and of inherently unbelievable circumstantial evidence, it must be presumed that the court-martial which convicted him was biased, prejudiced and vindictive toward him.

4. The atmosphere surrounding the trial was one of hysteria and terror.

We consider these allegations in the light of the papers before the District Court and under the principles we have enunciated.

 First we consider the point concerning the confessions. There were four of them, two holographic and two dictated. Appellant urges a number of grounds for the exclusion of these confessions. He urges that detention without arraignment renders inadmissible the subsequent confessions, under the McNabb rule.[40] But

36. 41 Stat. 792 (1920), 10 U.S.C.A. § 1495 (1927).

37. 41 Stat. 809 (1920), 10 U.S.C.A. § 1583 (1927).

38. Supra note 33.

39. Supra note 36.

40. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

military procedure does not provide for arraignment until the court-martial is convened, and moreover the McNabb rule is not a statement of constitutional requirement but is a rule of evidence promulgated by the Supreme Court in its supervisory capacity over the federal courts.

Appellant says that the confessions were the result of coercion, lack of sleep, continuous questioning, etc. The alleged circumstances which comprised the coercion were, of course, alleged facts. Testimony concerning them was taken at the trial. Herman Dennis himself testified. He did not describe continuous questioning for any appreciable length of time, did not mention lack of sleep or food, and specifically denied that he had been beaten. His testimony was to the effect that an officer insisted that his connection with the crime was known and that unless he confessed he would hang. The officers involved testified and related a different story of the events. They denied pressure, threats or promises. The admissibility and the worth of the confessions were argued vigorously by defense counsel at the conclusion of the evidence. Thus the admissibility of the confessions was determined by the resolution of a disputed issue of fact, thoroughly explored at the trial and examined upon both of the successive reviews by the military authorities. The accused's right was to have the disputed issue of coercion examined and determined by the properly constituted authority. That was done. He does not claim that it was not done. The issue to be presented to the court, as clearly demonstrated by the material before it, would not be a flagrant disregard of the accused's rights but would be an alleged erroneous finding upon an issue of fact. Upon the face of the papers presented by the petitioner the issue was, in the light most favorable to him, clearly debatable, and there was substantial evidence in support of the conclusion. Under such circumstances courts certainly have no power to review the finding and decision.

Next we consider the point concerning counsel. The Articles of War contain two provisions respecting counsel. One, 10 U.S.C.A. § 1482, supra note 34, provides that defense counsel shall be appointed by the authority which appoints the court and the trial judge advocate. The other, 10 U.S.C.A. § 1488, supra note 35, provides that an accused may have counsel of his own selection, in place of or in addition to appointed counsel. On January 25, 1949, Dennis was advised by the authorities that four officers were available to him as defense counsel. Dennis requested one of these officers, a Lieutenant Colonel Daly, as individual defense counsel. On April 18th the Commanding General advised Dennis that Colonel Daly was under charges and under psychiatric examination and was therefore not available. Dennis then wrote the General, on the same day, "In view of the contents of your letter of 18 April 1949, I do not desire the services of Lt Colonel Edward F Daly and I will accept the regularly appointed defense counsel as counsel in my case." Lieutenant Colonel Adrian W. Tolen had been appointed defense counsel, and Captain Bernard A. Katz and First Lieutenant John J. Ensley assistant defense counsel, by an order of the Commanding General on March 21st. (Special Order No. 65, Headquarters Twentieth Air Force, APO 234.)

Appointment of counsel by the convening authority satisfies constitutional requirements.[41] The Manual for Courts-Martial provides that the appointing authority shall determine whether special counsel requested by an accused is "available". When the trial began Dennis himself again requested Colonel Daly to assist regularly appointed counsel. The matter was explored, but the ruling of the appointing authority, affirmed by telegram from Washington, was deemed controlling. The charges, which had been served on April 14th, were then read and the accused was arraigned. A motion for the severance of the trial of Herman Dennis from that of Calvin Dennis was made and granted.

41. Altmayer v. Sanford, 5 Cir., 1945, 148 F.2d 161; Romero v. Squier, 9 Cir., 1943,

133 F.2d 528, certiorari denied, 1943, 318 U.S. 785, 63 S.Ct. 982, 87 L.Ed. 1152.

Herman Dennis then pleaded not guilty. Colonel Tolen indicated that he had been active in the case as defense counsel throughout the investigation and that Captain Katz had been so for some thirty days.

The factual material given the court by the petitioner disproves his claim as to lack of counsel. It shows that the accused was not deprived of counsel; he had three, in fact. They were officially appointed more than a month before the trial. It also seems clear that the requirement that requested counsel be found "available" by superior authority is a reasonable one in view of the exigencies of military affairs. Upon the appeals to the Board of Review and the Judicial Counsel, appellant was represented by the same counsel who so ably presented this appeal. Certainly these events did not deprive the court-martial of jurisdiction.

 In support of his allegations concerning the suppression of evidence, Dennis cites three exhibits attached to his complaint. One is an affidavit of a Chaplain, Captain E. E. Grimmett, one an affidavit of Lieutenant Colonel Edward Daly, and one an affidavit of a Miss Mary L. Hill. We can find in the affidavit of Chaplain Grimmett no reference to suppressed evidence. In the affidavit of Colonel Daly it is asserted that during the investigation and while affiant was engaged in preparation of the defense, "affiant learned that a set of Filipino dog-tags had been located in the immediate vicinity of the place where the body was found and that on the following morning a Navy officer's uniform saturated with blood was discovered"; that these items were in possession of the Guam Police Department; that in preparation of the defense affiant gathered statements and affidavits concerning those items; that affiant's brief and material on this matter were taken from his desk while he was being hospitalized; and that none of this evidence was presented at the trial.

Colonel Daly was a witness at the trial, testifying twice, called once as a witness for the prosecution and once as a witness for the defense. He also appeared as a witness called by the prosecution in the Burns case. Upon these occasions he made no mention of the dog-tags or the Navy uniform. His present affidavit does not show that the prosecutors knew of such items or that Colonel Daly ever called them to the attention of counsel either for the prosecution or for the defense.

Miss Hill in her affidavit says that she assisted Colonel Daly in the preparation of the defense "and that he was in possession of material evidence in their behalf which was not presented to the court" and that while he was confined many of the papers, files and other evidence were stolen from his office and quarters. Affiant does not say what the evidence was.

This matter of the dog-tags and the Navy uniform was presented to the Judge Advocate General upon the petition for a new trial. He held, after an investigation made at his direction, that the charge that this evidence was withheld from the court, as alleged in an affidavit of Colonel Daly, was baseless. Thus the official charged by Congress, under its constitutional power, to make this determination has made it. Congress provided no review of that determination. Petitioner's showing on the papers before us, which we have described, does not indicate any circumstances which could be regarded as a premise for an allegation that the Judge Advocate General was arbitrary or outside the boundaries of reasonable conclusion. That being so, the matter is not reviewable upon *habeas corpus*. Without attempting to state exhaustively the reasons for this conclusion on our part, we refer to the discussions of the Second Circuit Court of Appeals in Schechtman v. Foster [42] and of the First Circuit Court of Appeals in Coggins v. O'Brien (both Judge Woodbury's and Chief Judge Magruder's opinions),[43] of the right to *habeas corpus* in a federal court when a new trial has been denied in a state court. The full text of those discussions is helpful.[44] The sum of them is that, where a petition for a new

42. 1949, 172 F.2d 339, certiorari denied, 1950, 339 U.S. 924, 70 S.Ct. 613, 94 L. Ed. 1346.

43. 1951, 188 F.2d 130.

44. See also United States v. Johnson, 1946, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562.

346

trial upon allegations of perjured testimony known to the prosecutor was denied by the state corrective process, a federal district court has a large measure of discretion to determine whether the case, upon the papers before it and without hearing, is one of the exceptional cases which requires federal authority to inquire into state administration of justice.. In the matter before us there is nothing to depict the exceptional case which would require the courts to inquire into the treatment of this particular matter by the duly constituted military authorities. There is nothing in this record to indicate that the Judge Advocate General based his denial of the motion for new trial upon a denial of any constitutional right.[45]

■ This court has received a letter from one Francis L. Moylan, a witness at the trial, who says that he did see these petitioners near the scene of the crime shortly before the murder, as he testified, but that there were two other men also there and that, while he tried to bring this out, he was not permitted to do so. This letter is not part of the record and is unsworn. Moreover the record shows that Moylan was extensively cross-examined by the defense and was examined also by the court but made no reference whatever to seeing other persons and made no attempt to do so.

The matter of "planting" evidence concerned hairs found on a smock and in a truck. This was the subject of testimony and argument at the trial. Defense counsel in summation explicitly queried whether the smock had not been planted in the truck by an investigator. The matter was considered upon the reviews. It is covered by what we have already said.

■ No fact shown in the record supports the general allegation of hysteria and terror, and every relevant fact is to the contrary. The members of the courts-martial were, as we have said, officers in the Air Force and were detailed from distant points. The members of the court frequently and intensively questioned witnesses for the prosecution.

It is clear that the other allegations of the petition do not go to the jurisdiction of the court-martial, even under the expanded concept of "jurisdiction" which we have used in this case.

The Burns petition contains the following allegations:

1. Burns was held without arraignment by the Guam authorities from January 7 to January 17, 1949. During this period he was held incommunicado, subjected to continuous questioning, beaten, and denied sleep and edible food. Burns did not confess, but he alleges that Herman Dennis and Calvin Dennis, the alleged third participant in the offense charged, signed coerced confessions implicating him.

2. He was denied opportunity to consult with counsel during his detention by the Guam authorities. He was not allowed to obtain the advice of counsel until one day before his court-martial began on May 27, 1949.

3. Important evidence tending to prove his innocence was suppressed. Testimony given against him at the trial by Calvin Dennis was the result of coercion, threats and promises and is now shown to have been perjured by the affidavit of Calvin Dennis attached to the petition.

4. The trial was conducted in an atmosphere of terror, hysteria and vengeance.

Several of the foregoing allegations are the same as or similar to those of the Dennis petition. What we have already said will suffice for those points. The situations with respect to counsel and the confessions differ somewhat from the circumstances in the Dennis case. We therefore discuss those features.

■ Defense counsel for Burns were appointed by the proper authorities by formal order on March 21st. They were the same as those appointed in the Dennis

45. Cf. Phyle v. Duffy, 1948, 334 U.S. 431, 444, 68 S.Ct. 1131, 92 L.Ed. 1494; Young v. Ragen, 1949, 337 U.S. 235, 238, 69 S. Ct. 1073, 93 L.Ed. 1333; Woods v. Nierstheimer, 1946, 328 U.S. 211, 216, 66 S. Ct. 996, 90 L.Ed. 1177; Woolsey v. Best, 1936, 299 U.S. 1, 2, 57 S.Ct. 2, 81 L.Ed. 3; Hedgebeth v. North Carolina, 1948, 334 U.S. 806, 807, 68 S.Ct. 1185, 92 L.Ed. 1739.

case, Lieutenant Colonel Tolen, Captain Katz, and Lieutenant Ensley. Burns was brought to trial May 27th. The members of the court were not the same officers who sat in the Dennis case. The record shows the following:

"Prosecution: The accused is present together with the regularly appointed defense counsel and assistant defense counsel. By whom does the accused desire to be defended?

"Defense: The accused desires to introduce as individual counsel Captain Martin S Drucker, Headquarters, Marianas Bonins Command, and desires the regularly appointed defense counsel, Lieutenant Colonel Adrian W Tolen, and assistant defense counsel, First Lieutenant John J Ensley, to act as associate counsel. Let the record show that Captain Drucker is a member of The Judge Advocate General's Corps, Department of the Army, and is a qualified lawyer. Let the record also show that Captain Bernard A Katz who was appointed as assistant defense counsel in this case has been excused by the accused and his name has been deleted from the court by an order which will be appended to the record.

"Prosecution: Is the accused satisfied then with counsel indicated by defense at this time?

"Accused: Yes, sir."

Appellant refers to the affidavit of Chaplain Grimmett as support for the allegation respecting the one-day preparation of counsel. The affidavit says "That the Captain who finally represented Sergeant Burns [had] only one day to prepare his case". The reference must be to Captain Drucker, who was "individual counsel", i. e., counsel selected by the accused, and not the appointed counsel. That the accused may not have engaged or selected individual counsel until one day before trial (there is no direct statement in this record to that effect) is not ground for complaint. Appointed counsel had been designated long prior to trial. No request for a continuance was made, nor was any hint offered that Captain Drucker was unprepared.

The only assertions relating to other counsel sought by Burns concern an effort by Chaplain Grimmett to engage a civilian lawyer in Guam who required a $15,000 fee, of which $10,000 was to be a cash retainer in advance. The accused having no such funds, the Chaplain undertook a contribution campaign among the military personnel throughout the islands. The military authorities advised him that collections of such sums would have to be under supervision of the authorities. He alleges that he was informed by unnamed persons that they had been intimidated by their commanding officers into not contributing. Nothing further seems to have come of it. Obviously such circumstances do not constitute a denial of assistance by counsel.

We turn next to the matter of the alleged deliberate use of coerced and perjured testimony of Calvin Dennis. No confessions alleged to have been made by Burns were offered at his trial, and he did not take the stand. Calvin Dennis testified for the prosecution and gave eye-witness testimony to the guilt of Burns. Calvin Dennis now alleges that his former testimony was coerced and was false. It was vigorously maintained by defense counsel at the trial that Calvin Dennis's testimony was perjured. The decision of the court represents a finding upon a disputed question of fact. Both military reviewing authorities considered the point. Calvin Dennis's subsequent repudiation of this testimony was presented to the Judge Advocate General on the application for new trial. What we said in respect to the suppressed evidence allegation in the Herman Dennis case applies to the present point.

As is our frequent practice in capital cases, we have examined the whole of both of these long records. Accused were vigorously defended at all points. Actions of the military authorities appear to have conformed meticulously to the rules of procedure, and the reviews were exhaustive. We conclude, in agreement with the District Court, that the facts alleged in the petitions, viewed in the light of the return to the rule, do not supply grounds upon

which the relief sought can be granted. The judgments will be affirmed.

The executions will be further stayed for a period of sixty days to enable counsel for appellants to file petition for writ of *certiorari*, if they are so minded, and to apply to a Justice of the Supreme Court for a further stay pending disposition of such a petition.

Affirmed.

BAZELON, Circuit Judge (dissenting).

The majority of this court points out, and I agree, that the writ of habeas corpus has been the instrument by which allegations of jurisdictional infirmity in courts-martial have been tested. For this purpose, jurisdiction has long left its technical meaning behind and become, instead, the vehicle through which an expanding conception of due process has been applied to matters arising out of military as well as civil law. Through the years, those constitutional considerations which constitute the fundamentals of due process have been incorporated into the "jurisdiction" concept so that their denial has been said to deprive a court-martial of jurisdiction.

I cannot agree, however, that we should narrow our scrutiny of courts-martial by singling out individual allegations to determine just how "flagrant" the allegedly unconstitutional actions are. Such an approach could whittle down the "freedom writ" and virtually withdraw the military from its reach. The fairness of a trial must be determined by appraisal of the whole rather than by picking and choosing among its component parts. A total configuration of the allegations in these cases discloses something which the separate parts do not. The totality, if proved, would constitute the very antithesis of fairness.

Although the cases recognize the unavailability of certain constitutional guarantees in courts-martial,[46] they have not foreclosed others which go to the question of fair trial. Violation of guarantees embodied in the Constitution and affecting the basic fairness of a trial makes a court martial void—not only in my view but in that of the cases.[47] Similarly, although violation of certain Articles of War by the military in the course of a court-martial may not be challengeable by habeas corpus, other violations which involve denial of a fair trial would call for issuance of the writ.[48]

These principles are clearly illustrated by the recent cases of Whelchel v. McDonald, and Hiatt v. Brown. Hiatt involved a provision of the Articles of War which gave the appointing commander discretion in naming the law officer of the court-martial. Although the writ did not issue, the Court made it clear that one would issue if there had been a "gross abuse of that discretion", for that "would have given rise to a defect in the jurisdiction of the court-martial."[49] Similarly, in Whelchel, the Court thought it "plain from the law governing court-martial procedure that there must be afforded a defendant at some point of time an opportunity to tender the issue of insanity. * * * a denial of that opportunity * * * goes to the question of jurisdiction."[50]

If the abuse of a statutory discretion which affects the fairness of the trial would constitute a jurisdictional defect, so also would violation of constitutional safe-

46. E. g., trial by jury, see Whelchel v. McDonald, 1950, 340 U.S. 122, 127, 71 S.Ct. 146, 95 L.Ed. 141, and cases cited therein.

47. Some of these cases are collected in Sunal v. Large, 1947, 332 U.S. 174, 184, 67 S.Ct. 1588, 91 L.Ed. 1982, dissenting opinion of Mr. Justice Frankfurter; Smith v. United States, 1950, 88 U.S.App. D.C. 80, 187 F.2d 192, certiorari denied, 1951, 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358; United States ex rel. Innes v. Hiatt, 3 Cir., 1944, 141 F.2d 664; see note 39, infra; Note, 61 Harv.L.Rev. 657 (1948).

48. Compare Humphrey v. Smith, 1949, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986, *with* Hiatt v. Brown, 1950, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691.

49. Hiatt v. Brown, 1950, 339 U.S. 103, 109, 70 S.Ct. 495, 498, 94 L.Ed. 691.

50. Whelchel v. McDonald, 1950, 340 U.S. 122, 124, 71 S.Ct. 146, 148, 95 L.Ed. 141.

guards designed to assure a fair trial. Obviously, the Constitution furnishes no lesser a guide to the military than a statute.[51] In either case, that which goes to the essence of a fair trial must be accorded an accused and failure to do so creates a jurisdictional defect.

Appellants contend that they have been denied rights which bear vitally on the fairness of their trials and hence a writ of habeas corpus should issue. I will take up the more serious allegations in turn.

*Detention Without Counsel*

According to the affidavits attached to the petition for the writ, appellants Herman Dennis and Burns were apprehended by the military authorities on Guam on January 7, 1949.[52] They were turned over to the civil authority governing the island and held "incommunicado."[53] By January 13, after six days of repeated questioning without benefit of counsel, Dennis had signed four separate confessions, which vary considerably in detail and content.[54] The detention of both Dennis and Burns continued without "arraignment" until January 17, 1949.[55] At no time up to that point was either appellant furnished with or permitted to summon counsel,[56] despite a specific request of Dennis for counsel made at about the time of the second confession.[57] On January 25, the Commanding General of the Twentieth Air Force "forwarded a letter to the accused stating that [named counsel] were available."[58] Appellants were returned to the custody of the military on or about January 29, 1949, without, they allege, having been permitted to consult counsel up to that time.[59]

Appellees contend that this detention violated none of appellants' rights since "there is no provision for * * * preliminary hearing or arraignment in military law" and no applicable section of the Guam civil regulations was violated. What the military or Guam laws require is of small moment. We are concerned here with "fundamental principles of liberty and justice."[60] Although the exact point at which appellants were free to consult with counsel is not clear from the record, it appears that they did not receive assistance until after a long period of incommunicado detention with repeated questioning, and until after Dennis had confessed. In my view, this suggests "all the evil implications of secret interrogation of persons accused of crime."[61] I put aside all arguments based on the emergencies of

51. Cf. Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616.

52. Transcript of H. Dennis Record, p. 10; Transcript of Burns Record, p. 21.

53. I. e., in virtual solitary confinement, Transcript of H. Dennis Record, pp. 3, 137; Record of H. Dennis Trial by General Court-Martial, p. 221; Transcript of Burns Record, p. 16.

54. Transcript of H. Dennis Record, pp. 61–3. The latter two, unlike the first two, contained statements that they were voluntary and that Dennis had been advised that they could be used against him. Dennis tries to raise here the voluntary nature of these confessions, but he also testified at the trial that they were voluntary and alleges no grounds why he should be allowed to repudiate that testimony.

55. Transcript of H. Dennis Record, p. 3; Transcript of H. Dennis Trial by General Court-Martial, p. 227; Transcript of Burns Record, p. 16.

56. Transcript of H. Dennis Record, p. 4; Transcript of Burns Record, p. 16.

57. Record of H. Dennis Trial by General Court-Martial, p. 232.

58. Transcript of H. Dennis Record, p. 23; Transcript of Burns Record, p. 34.

59. Transcript of H. Dennis Record, p. 4; Transcript of Burns Record, p. 16. The record does not indicate what assistance, if any, appellants had between their delivery to military authorities about January 29, and March 21. On that date, the three counsel who represented them at the court-martial were named. As set forth in the majority opinion, one of these three was subsequently replaced with respect to appellant Burns.

60. Hebert v. Louisiana, 1926, 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270.

61. McNabb v. United States, 1943, 318 U.S. 332, 344, 63 S.Ct. 608, 614, 87 L.Ed. 819.

the battlefield and the impracticality of reasonable promptness in furnishing defense counsel under such circumstances. Whatever validity these arguments have where the detention occurs in a combat zone, they have no application to the Island of Guam—which was under a civil administration—in the relatively peaceful year of 1949.

### Interference with Counsel

About January 25, appellants were permitted to consult with two chaplains, one of whom made unsuccessful attempts to raise a large amount of money for the retention of local civilian counsel. One of the supporting affidavits asserts the affiant's personal knowledge of interferences with the chaplain's mail, etc., which were designed to thwart attempts to raise these funds.[62] Appellants also asked for the assistance of Lt. Colonel Daly, Staff Judge Advocate of the Marianas Air Material Command. Daly was first permitted to act as counsel, but later was withdrawn by the Commanding General as "not available."[63] While it is clear that the Commanding General's determination concerning the availability of counsel may not be reviewed by habeas corpus in the absence of a gross abuse of discretion, it is equally clear that whenever such abuse is present, the determination may be reviewed by habeas corpus.[64] Daly's affidavit attached to the petition alleges that the charges on the basis of which he was made "unavailable" were "all totally without foundation and * * * were contrived by the Commanding Generals * * *."[65] This, of course, is a mere conclusionary statement, and, standing alone, would be entitled to slight consideration. But it does not stand alone. For he alleges that the officer assigned to investigate him was told by the Commanding General that "he must 'dig something up to pin'" on Daly; and that a witness who testified for the prosecution at appellants' trial admitted to Daly that the investigator had promised him his "stripes" back "if he would make a statement against [Daly]."[66] Moreover, one affiant, Mrs. Hill, affirmed that an attempt was made to induce her to give false testimony at the trial upon the promise that it would be helpful to Daly "who was then in serious difficulties because of his attempts to defend the accused and bring the true facts before the court."[67] Like the alleged interference with the fund-raising campaign, these allegations touch on matters outside the court-martial record.[68]

### Suppressed Evidence

The petition asserts that "[t]he prosecution was so intent upon securing a conviction of your petitioner despite that knowledge of his lack of guilt that they suppressed important evidence tending to show his innocence * * *."[69] Daly's affidavit pins this down by alleging, on the basis of personal knowledge, "that a set of Filipino dog-tags had been located in the immediate vicinity of the place where the body was found and that on the following morning a Navy officers [sic] uniform saturated with blood was discovered."[70] This allegation raises matters not contained in

---

62. Transcript of H. Dennis Record, pp. 11–13, 24; Transcript of Burns Record, pp. 22–4, 35. Chaplain Grimmett was not called to testify. Affiant Daly testified for the defense but was not questioned concerning these facts which he acknowledges he knew before the trial.

63. Transcript of H. Dennis Record, p. 17; Transcript of Burns Record, p. 28. The notice of withdrawal was dated April 18, 1949.

64. Cf. Hiatt v. Brown, 1950, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691.

65. Transcript of H. Dennis Record, p. 27; Transcript of Burns Record, p. 38.

66. Transcript of H. Dennis Record, p. 27; Transcript of Burns Record, p. 38. Mrs. Hill, one of the supporting affiants, was present and witnessed this. Id. at 44.

67. Transcript of H. Dennis Record, pp. 32–3; Transcript of Burns Record, pp. 43–4. See note 31, infra.

68. Daly and Mrs. Hill were called as defense witnesses but were not questioned concerning these matters. Both knew of them before trial, but the record does not disclose whether or not this knowledge was communicated to defense counsel before trial.

69. Transcript of H. Dennis Record, p. 5.

70. Id. at 29. Transcript of Burns Record, p. 40.

the court-martial record.[71] We are not told either in the affidavit or in the petitions how these items of evidence tie in with appellants' defense but we can assume with respect to the uniform that a tie-in would be difficult to show until the uniform had been examined for hairs, the blood stains analyzed, etc. With respect to the dog-tags, an independent search of the Herman Dennis court-martial record discloses that one prosecution witness testified that he had observed two customers inside the store talking with the victim shortly before the crime. One of the two he identified as resembling appellant Herman Dennis.[72] On cross-examination, this witness admitted testifying during the course of preliminary investigations that the customers "appeared to be Filipino soldiers."[73]

### Attempts to Suborne Perjury and Intimidate Witnesses

Appellants alleged that the prosecution "sought to procure witnesses to perjure themselves * * * and intimidated and threatened those who sought to help your petitioner * * *."[74] In support of this allegation, Chaplain Grimmett's affidavit charges that the Trial Judge Advocate "went to each of the defense witnesses and intimidated them with threats of perjury unless they changed their statements," and that this could be substantiated by specifically named people—including defense counsel—"and any of the defense witnesses."[75] The affidavit does not state whether or not defense counsel knew of this before trial. There was no inquiry of any of the witnesses, except Calvin Dennis whom I shall discuss in a moment, concerning intimidation or any matter touching on attempts to suborne perjury. This allegation, like many others, therefore raises matters outside the court-martial record.

The allegation of attempts to suborn perjury is given specific content by witness Mary L. Hill. Her supporting affidavit affirms that in the presence of two other named persons one of the prosecution's chief investigators "tried to prevail upon [her] to make a false statement before the court"[76] concerning the voluntariness of appellant Herman Dennis' confessions. The Judge Advocate General of the Air Force acknowledged in a memorandum to the Secretary of the Air Force that there was "substantial evidence" that Mrs. Hill had been prevailed upon by the prosecution's investigators to make a false affidavit but he dismissed the matter as immaterial since Mrs. Hill resisted these pressures and testified truthfully at the court-martial.[77] Lt. Colonel Daly, the deposed defense counsel, also swore that Sergeant Wright, who was interrogated in the pre-trial investigations, told him that he had been threatened by an investigator for the prosecution with a perjury prosecution

---

71. Daly does not allege that the prosecution, as distinguished from the Guam police, was aware of the existence of this evidence. I think it unrealistic to suppose that they were not. In my view, Daly's shortcoming, if any, in not testifying as to these matters at trial can hardly be attributed to the defendant-appellants.

72. Record of H. Dennis Trial by General Court-Martial, pp. 103–5.

73. Id. at 105; see also Record of Burns Trial by General Court-Martial, p. 140. In this connection, it should be noted that the Clerk of the court has received an unsworn letter, dated April 16, 1952, from one of the Government's witnesses to the effect that although he observed appellants near the scene of the murder, he also observed two other persons. This letter reads in part: "However, as my employees and I left, a few minutes before Miss Ruth Farnsworth was killed, there were two men who went into the shop. Their car was parked to the right of my Jeep and to the left was a military truck. The description of these two men was given—yet at the trial this evidence was not brought up. When I tried to bring it up several times it seemed I was talking to the prosecutor and his subordinates; therefore, these men did not receive a fair trial."

74. Transcript of H. Dennis Record, pp. 5–6.

75. Transcript of H. Dennis Record, p. 15; Transcript of Burns Record, p. 26.

76. Transcript of H. Dennis Record, p. 33; Transcript of Burns Record, p. 44. See note 22, supra.

77. Transcript of H. Dennis Record, p. 126.

"if he testified at the trial to what he himself, in his own mind, was thoroughly convinced had happened * * *," and that he had communicated these threats to the Staff Judge Advocate of the Twentieth Air Force.[78] Sergeant Wright was not called to testify at the trial.

### Coerced Confession of Calvin Dennis

One other point remains with respect to Robert W. Burns. Three persons were charged with these crimes—Burns, and Herman Dennis, appellants here, and Calvin Dennis. They were tried separately. At the Burns trial, Calvin Dennis, the only alleged eye-witness to the crimes, "confessed," implicating Burns. Burns alleges that except for this confession, "no testimony in the record in any way directly connects this petitioner with the crime"; [79] that such implication was false; and that such testimony at the trial constituted perjury which had been suborned by the prosecution upon a promise of reward therefor in the form of a lesser punishment for the witness Calvin Dennis. This allegation is supported by an affidavit from Calvin Dennis in which he confesses his perjury and the fact that it was induced by the prosecution by physical coercion, by threats that the investigators were "going to pin murder and rape and kidnapping on me,"[80] and by offers of "part of the the $4,000 dollars [sic] reward if I sign a statement."[81] Calvin Dennis further affirms that the Trial Judge Advocate "promise [sic] me if I would testify against Burns he would see that my sentence would be disapprove [sic] in Washington at the reviewing board."[82]

It is true that Calvin Dennis was questioned at the court-martial and testified to the voluntary nature of his confession. Ordinarily, as the majority points out, this issue would be deemed settled, for habeas corpus will not lie to review the fact finder's acceptance of one version of events rather than another. But this case goes beyond the limits of that well-accepted doctrine. Calvin Dennis' affidavit is clearly new evidence of a vital nature which calls for a reappraisal of the voluntariness of his confession.[83]

### Conclusions

I do not assume that due process is the same in a military setting as it is in a civil setting.

"Many of the procedural safeguards which have always been observed for the benefit of defendants in the civil courts are not granted by the military law. In this respect the military law provides its own distinctive procedure to which the members of the armed forces must submit. But the due process clause guarantees to them that this military procedure will be applied to them in a fundamentally fair way. * * * it is open for a civil court in a habeas corpus proceeding to consider whether the circumstances of a court-martial proceeding and the manner in which it was conducted ran afoul of the basic standard of fairness which is involved in the constitutional concept of due process of law * * *." [84]

Appellants' allegations, supported by affidavits, raise serious doubt whether "the

78. Transcript of H. Dennis Record, p. 25; Transcript of Burns Record, p. 36.

79. Transcript of Burns Record, p. 18.

80. Transcript of Burns Record, p. 47.

81. Ibid.

82. Ibid. See also Daly's affidavit. Id. at 36–7.

83. Cf. United States ex rel. McCann v. Adams, 1943, 320 U.S. 220, 64 S.Ct. 14, 88 L.Ed. 4; Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791.

84. United States ex rel. Innes v. Hiatt, 3 Cir., 1944, 141 F.2d 664, 666. The

court illustrated what it meant by a denial of fundamental fairness: defendant induced to testify against self by use of threats or promises in presence of court and jury, Chambers v. Florida, 1940, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; use of fraud, collusion, trickery and subornation of perjury on part of state prosecution, Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; domination of trial by mob violence in courtroom, Moore v. Dempsey, 1923, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543.

Cf. Whelchel v. McDonald, 1950, 340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141, opportunity to present defense of insani-

whole course of events"[85] from apprehension to conviction did not amount to a serious denial of fundamental fairness. If proved, they would paint a portrait of inquisitorial zeal rather than of a fair trial in the Anglo-American sense.

The allegations concerning detention without counsel are supported by the record and are not in dispute. Those touching interference with counsel, suppressed evidence, attempts to suborn perjury and intimidate witnesses, and the repudiated confession of Calvin Dennis rely on matters outside the record, which therefore were not considered by the convicting tribunal. Appellees do not think this important, however, since allegations similar to those made herein have been the subject of special independent investigation by high military authorities. These review and investigatory procedures are wisely designed to minimize possible injustices at the court-martial level and the apparently

thorough study which these cases have received cannot be disregarded. But "perfection in the machinery for correction * * * does not seem to [me] sufficient to allow a Judge of the United States to escape the duty of examining the facts for himself when if true as alleged they make the trial absolutely void."[86] Moreover, the Supreme Court recently pointed out that the availability of military review and the investigating procedures which appellants used in these cases does not preclude further review by way of petition for writ of habeas corpus.[87] The basis for the Judge Advocate General's denial of new trials in these cases is not clear with respect to all of appellants' allegations. To the extent that he found them insufficient, if true, to grant the relief sought, he abused his discretion.[88]

In view of the serious nature of the allegations and supporting affidavits, I would remand to the District Court for a hearing on the allegations of the petition.

ty; see Hiatt v. Brown, 1950, 339 U.S. 103, 70 S.Ct. 495, 94 L.Ed. 691, abuse of discretion in appointing law member of court-martial; Wade v. Hunter, 1949, 336 U.S. 684, 688–690, 69 S.Ct. 834, 93 L.Ed. 974, double jeopardy; Powers v. Hunter, 10 Cir., 1949, 178 F.2d 141, 145, 15 A.L.R.2d 381, certiorari denied 1950, 339 U.S. 986, 70 S.Ct. 1006, 94 L.Ed. 1388, court can review severity of court-martial sentence to see if it violates prohibition against cruel and unusual punishment; Schita v. King, 8 Cir., 1943, 133 F.2d 283, certiorari denied, 1944, 322 U.S. 761, 64 S.Ct. 1273, 88 L.Ed. 1589, denial of counsel of choice, denial of right to call witnesses, testimony against petitioner given out of his presence at trial, witnesses testified against defendant without being sworn, petitioner and his witnesses intimidated, etc.

85. Smith v. United States, 1950, 88 U.S. App.D.C. 80, 187 F.2d 192, 197, certiorari denied, 1951, 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358.

86. Moore v. Dempsey, 1923, 261 U.S. 86, 91–92, 43 S.Ct. 265, 266, 67 L.Ed. 543.

87. Gusik v. Schilder, 1950, 340 U.S. 128, 132–133, 71 S.Ct. 149, 95 L.Ed. 146.

88. Even though the denial of a new trial was based to some extent on disbelief of the allegations, I think the exceptional circumstances of these cases require a hearing in the District Court. Cf. Ex parte Hawk, 1944, 321 U.S. 114, 118, 64 S.Ct. 448, 88 L.Ed. 572; Coggins v. O'Brien, 1 Cir., 1951, 188 F.2d 130, 133; but cf. Schechtman v. Foster, 2 Cir., 1949, 172 F.2d 339, certiorari denied Schectman v. Foster, 1950, 339 U.S. 924, 70 S.Ct. 613, 94 L.Ed. 1346.